**MILLS, Plaintiff-Appellee, v. SPRINGFIELD (City) et, Defendants-Appellants.**

Ohio Appeals, Second District, Clark County.

No. 527.   Decided April 28, 1956.

W. T. Hicks, Springfield, for plaintiff-appellee.

Richard H. Wehler, City Solicitor, George A. Schwer, Special Counsel, Springfield, for defendants-appellants.

(FESS, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION

By FESS, J.

Appeal on questions of law from a judgment entered upon a verdict for plaintiff.

By way of preface, it is suggested that in negligence cases generally attention is focused upon whether the defendant is negligent or whether the plaintiff is chargeable with contributory negligence, and there is an inclination to overlook the fact that occasionally an accidental injury occurs not attributable either to negligence of the defendant or to the plaintiff. Slipping on ice, resulting in injury, is a painfully common occurrence.

Evidence on behalf of the plaintiff tends to show:

1. An unusually heavy precipitation of snow some time between December 14th and 28th, 1951, which necessitated the use of snow plows by the defendant upon its principal streets, for the benefit of vehicular traffic.

2. The operation of such snow plows resulted in ridges of snow and ice from two to three feet in height on each side of Limestone Street (State Route No. 68) within the street but alongside the curbs.

3. At the intersection of Trenton Place and Limestone Street, located in the residential district some distance from the down-town area, this ridge of snow and ice extended laterally across the entrance of Trenton Place into Limestone Street.

4. Approximately 7:30 p. m. on the evening of December 28th, plaintiff and her sister alighted from a city bus at the northeast corner of the intersection and proceeded diagonally in a southwesterly direction across the intersection with the intention of entering their residence on the southwest corner thereof.

5. The street light maintained by the Ohio Edison Company was out and had been out for at least the previous night. There was some, but dim, light reflected from the lights on the bus.

6. Plaintiff was aware of the ridge, having observed it in daylight on the morning when she left for work and on several days previous thereto.

7. Plaintiff testified:

"Q. What did you do after you dismounted from the bus?

"A. Well, naturally, I tried to work across to my home; and when I got to the west side, I found the condition just, the snow was piled up three feet, almost masses were almost three feet high; and even in the darkness, as I say the light was uneven and the darkness, as I tried, you would find a safe step, some place safe to step on, but I had to get over that pile of snow and as I stepped on it, I fell. * * * I think I groped a little for safety; but I couldn't see and as soon as I got on this pile of snow, naturally I just went down."

8. Plaintiff's witnesses put her in Limestone Street after her fall, three feet from the south boundary extended of Trenton Place and three or four feet from the west boundary of Limestone Street.

Defendant's undisputed evidence with respect to weather conditions previous to the accident is as follows:

| Date | Temperature | | Snow on ground | Snowfall | Rain |
|---|---|---|---|---|---|
| | Max. | Min. | | | |
| Dec. 14 | 31 | | 7.6" | 7.6" | |
| 16 | 9 | | 7. " | none | |
| 17 | 23 | | 6. " | none | . |
| 18 | 33 | | 10. " | 5.1" | |
| 19 | | . | 9. " | none | |
| 20 | | | 8. " | 2.1" | .56 |
| 21 | 42 | | 6. " | none | .24 |
| 22 | | | 6. " | none | |
| 23 | | | 5. " | none | |
| 24 | | | 5. " | none | |
| 25 | 39 | 24 | 4. " | none | .69 |
| 26 | 39 | 25 | 3. " | none | |
| 27 | 29 | 12 | 3. " | none | |
| 28 | 36 | 16 | 3. " | none | |

Defendant's evidence tends to show:

1. No ridge of snow or ice such as described by plaintiff's witnesses, but some snow or ice along the curbs of Limestone Street.

2. That instead of proceeding diagonally across the intersection, plaintiff and her sister proceeded directly across Limestone Street from the northeast corner to the northwest corner and then south upon the westerly cross-walk over Trenton Place. In her deposition plaintiff testified she proceeded straight west after alighting from the bus. (R. p. 48.)

3. Two police scout crews and the emergency ambulance of the fire department arrived at the scene. The six members of the crews each testified that the plaintiff was sitting upon the westerly cross-walk, complaining of her injuries and unable to move, seven feet north of the south curb of Trenton Place.

4. The police officers and firemen also testified that the entrance from Limestone Street into Trenton Place over the westerly crosswalk was icy, slippery and rough as a result of footprints and tire tracks, and that the three vehicles encountered no difficulty in entering Trenton Place and parking beyond the point where plaintiff sat.

Although there is no direct evidence that the defendant plowed the snow on Limestone Street, there is substantial circumstantial evidence from which it may be reasonably inferred that the city did so. There is direct testimony submitted by plaintiff and her witnesses that a two or three-foot-high ridge of snow and ice existed on the day of the accident all along the westerly side of Limestone Street, which obstructed plaintiff's passage to her residence. Upon the inference that the defendant created the ridge of snow as a result of plowing snow, it is also apparent that the temperature on December 21st, 25th, 26th, 27th and 28th would cause thawing and subsequent freezing of the surface of the accumulation of snow from December 25th to the date of plaintiff's injury.

Fundamentally, §723.01 R. C. (§3714 GC), confers upon a municipal corporation the power to regulate the use of streets; authority to care, supervise, and control public highways, streets, sidewalks, etc., within such municipality; and imposes the duty to cause them to be kept open, in repair, and free from nuisance. In effect, the statute is a requirement that the corporation shall prevent all nuisances therein, and when, by allowing a street to become so out of repair as to be dangerous, the corporation itself maintains a nuisance, and a suit to recover for injuries thereby occasioned is for damages arising from a nuisance, or "for a nuisance." **Cardington v. Frederick, 46 Oh St 442, 447.**

Although the statute does not in terms declare a liability for the failure to perform the duty, "a right of action for damages caused by such neglect arises by the common law." **Cardington v. Fredericks, supra; Zanesville v. Fannan, 53 Oh St 605, 619.**

But the obligations imposed by the statute are in derogation of the common law and must be strictly construed.

**Wooster v. Arbenz, 116 Oh St 281,** holding that municipalities, while engaged in the improvement of streets, are performing a governmental function and are not liable under the statute for the negligence of its servants while engaged in making improvements unless such negligence relates to a condition of the street itself and the damage is caused by a defective condition.

See also **Seldon v. Cuyahoga Falls, 132 Oh St 223, 225; Cleveland v. Amato, 123 Oh St 577; Wall v. Cincinnati, 150 Oh St 411; Tolliver v. Newark, 145 Oh St 517.**

The statute provides a general rule of conduct and makes negligence the basis of liability for its violation. Thus, the nuisance referred

to is a qualified rather than an absolute nuisance. **Taylor v. Cincinnati, 143 Oh St 426; Wall v. Cincinnati, 150 Oh St 411; Kimball v. Cincinnati, 160 Oh St 370.**

This is not to say, however, that a city would not be liable for an absolute nuisance existing in a street.

It requires only reasonable care and vigilance, in view of all the surroundings, to keep the streets and ways in a reasonably safe condition for travel in the usual and ordinary modes, and does not exact that which is unreasonable or impracticable. Municipalities are not insurers of the safety of their public ways, and are liable only for negligence in creating a faulty condition in such ways, or in failing to repair, remove or guard against defects or obstructions therein, after actual or constructive notice of their existence. The standard of care required to be exercised in keeping streets in repair and free from nuisance is that care which persons of reasonable and ordinary prudence exercise under like circumstances and conditions. Taylor v. Cincinnati, supra; **Cleveland v. Amato, 123 Oh St 575.** But liability arises upon proof that agents of a municipality actively created a faulty condition. Cleveland v. Amato, supra; Taylor v. Cincinnati, supra.

The provisions of §723.01 R. C. do not change the rule that a municipality is not liable for injuries resulting from the usual and natural accumulation of snow and ice on its streets and sidewalks. **McCave v. Canton, 140 Oh St 150; Smith v. Cuyahoga Falls, 73 Oh Ap 22.** The reasons for the rule are that a municipality should not be required by law to remove from the miles of streets and sidewalks within its limits the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things and when these conditions exist they are generally obvious so that travelers know of them and assume the risk. The law does not require what is unreasonable, nor does it condemn an act or omission as negligent which can be done or prevented only by extraordinary exertion or by the expenditure of extraordinary sums of money. **Chase v. Cleveland, 44 Oh St 505; Norwalk v. Tuttle, 73 Oh St 242;** McCave v. Canton, supra.

In Maine, a statute provides that no town is liable to an action for damages to any person on foot, on account of snow or ice, on any sidewalk or crosswalk. This statute has been held to preclude recovery even though the pile of snow constituted a nuisance. Verreault v. Lewistown (1954), 104 A. 2nd., 538.

There is authority for the proposition that a City may await a thaw in order to remove snow and ice, and also that a city cannot be charged with negligence in not removing ice resulting from a thaw or rain and subsequent freezing for a sufficient length of time prior to the injury to become responsible for its removal. 13 A. L. R. 56; 80 A. L. R. 1162.

A different rule is applied where the ice or snow has accumulated wholly or in part through the fault of the city, as where, because of a defect in a sidewalk, ice is caused to form which would not otherwise do so, or where the formation of ice on a sidewalk is due to the failure of a city to prevent overflow of water or to repair a leaking hydrant, or where a downspout is so defectively constructed as to cast water upon a

sidewalk, which subsequently freezes, resulting in injury to a pedestrian. McCave v. Canton, supra. The decisions cited in support of this principle of liability deal with injuries to pedestrians upon a sidewalk or crosswalk rather than injuries suffered by a pedestrian upon a highway. Where sidewalks are available, the duty is imposed upon the municipality for the benefit of pedestrians and a commensurate duty is imposed with respect to highways for vehicular traffic. Thus, plowing snow upon a highway is in the interest of vehicular traffic rather than pedestrians, whereas the duty of removing a hazardous accumulation of ice from a sidewalk is exclusively for the benefit of pedestrians. But notwithstanding no duty is imposed upon a municipality to keep a highway open, in repair and free from nuisance where sidewalks are provided for the benefit of pedestrians, a municipality ought to be held liable for malfeasance in creating a condition hazardous to a pedestrian upon the highway incident to the performance of its duty to keep the highway open. Squillace v. Mountain Iron (1945) 223 Minn., 8, 26 N. W. 2nd, 197; Smith v. District of Columbia (1951) 189 F. 2nd, 671, 39 A. L. R. 2nd, 773. After all, pedestrians have the right to use a street when necessity therefor arises, and it would seem that a city should be obligated to exercise the same degree of care with respect to highways over which pedestrians are required to walk as that which is applicable to sidewalks. Cf. Squillace v. Mountain Iron, supra.

We proceed upon the assumption that the city, in the performance of its obligation to keep its streets open for vehicular traffic, in plowing, scooped the snow into a ridge on the sides of Limestone Street. The ridge or hummock of snow would be an impediment to a pedestrian but would not become hazardous until such time as rain may have fallen on it or the warm weather would cause it to melt into slush and the subsequent freezing temperature turn it into ice. Since there is no proof that the city had actual notice of this icy condition, it would not become liable therefor without proof that the icy condition existed for a sufficient time prior to plaintiff's injury to constitute constructive notice thereof, and also for a sufficient length of time after such notice to have permitted the city to cure the fault and thereby prevented the injury. The period dates from the date of freezing to the date of the injury. The defendant can hardly be charged with negligence in its failure to foresee or anticipate that the ridge of snow, concerning which it is charged with having created, would remain in the street for any appreciable length of time, and with consequent thawing and freezing would be converted into any icy, hazardous condition resulting in injury to a pedestrian. A municipality is not bound to anticipate improbable or unprecedented events, and provide against their possible results. **Village of Oak Harbor v. Kallagher, 52 Oh St 183.** From the evidence relating to the weather, it could reasonably be inferred that the ridge of snow turned to ice the evening of December 25th following rain and a temperature of 39 degrees, and freezing temperature that evening. On cross-examination, plaintiff admitted that she had been walking across the same icy condition for some days prior to her injury, but stated that "it wasn't as dark or frozen as hard as it was that night." Plaintiff's

sister testified that when she went to work on the morning of the accident, the pile of snow and ice "wasn't icy then. It was more snow. It wasn't frozen." One of plaintiff's witnesses said that the snow and icy condition had existed for approximately a week, but did not say that it was icy for that period. Even upon the assumption that the snow would have turned to ice as early as December 21st when the temperature was 42°, the period is insufficient as a matter of law to constitute constructive notice to the defendant with respect to the hazard. No obligation is imposed upon a city to take unusual means and use extraordinary care to keep itself advised of the condition of its streets and highways in outlying residential sections. The existence of a hazardous accumulation of snow and ice for several days in a downtown area might be sufficient to afford a presumption of constructive notice, but this is not so as to streets remote from business districts. **Chase v. Cleveland, 44 Oh St 505.**

Arville v. Coyle, 33 Oh Ap 366, is to be distinguished because the city had let a firehose remain across a sidewalk for three days, and was chargeable with actual notice thereof.

The record is devoid of any evidence tending to show that it was feasible or reasonably practicable for the city to have removed the obstruction. Whether a person has exercised ordinary care is a question for the determination of the jury under all the evidence and appropriate instructions by the court. **Gibbs v. Girard, 88 Oh St 34; St. Mary's Gas Co. v. Brodbeck, 114 Oh St 423.** The Supreme Court has recognized that customs and usage may be a circumstance to be considered by a jury in determining whether a defendant exercised ordinary care. **Ault v. Hall, 119 Oh St 422; Witherspoon v. Haft, 157 Oh St 474.** But because the introduction of such evidence may tend to inject collateral issues in a case, such testimony, relevant upon the subject, may be excluded. **Jones v. Girard, 111 Oh St 258; Schwer v. New York, etc. Rd. Co., 161 Oh St 15.** And it is held that in determining whether a defendant exercised that care which an ordinarily and reasonably prudent person would have exercised under the same or similar circumstances, inquiry need only be made into matters within the common knowledge of men of average, general information. Schwer v. New York, etc. Rd. Co., supra. Thus, men of average general information and intelligence may determine whether a municipality is guilty of negligence in creating a defect in a street or sidewalk or in permitting it to remain for such period of time to constitute constructive notice thereof. To support recovery upon the ground of negligence in the instant case, the jury would be required to find that it was the duty of the city, either to remove snow and ice from all crosswalks throughout the city within several days after the condition arose, or to cut paths through ridges of snow and ice which obstruct passage for pedestrians. In order to support such a finding, evidence would be required to show that such action could be reasonably accomplished. The burden rested upon the plaintiff to prove that her damage was the proximate result of the failure of the defendant to use the care which other cities are accustomed to use under the same or similar circumstances. **Taphorn v. Cincinnati, 96 Oh Ap 454; Republic L. & F. Co. v. Cincinnati, 97 Oh Ap 532.** Cf. **Englehardt v. Phillips, 136 Oh St 73.** We repeat that the law does not require what is

unreasonable, nor does it condemn an act or omission as negligent which can be done or prevented only by extraordinary exertion or by the expenditure of extraordinary sums of money incident to the removal of an unusual accumulation of snow and ice.

Our conclusion that the record fails to disclose any negligence proximately contributing to plaintiff's injury and damage disposes of the case, but we add that in our opinion the evidence reveals that the plaintiff assumed the risk resulting in her injury and was guilty of negligence proximately contributing thereto. She was fully aware of the condition of the street. It is difficult to conceive that the ridge of ice was three feet high and only two feet wide, but accepting plaintiff's testimony as true, as we are required to do, it was an obvious hazard which she had observed and crossed on her way to and from work for several days. She elected to attempt to cross the icy obstacle in darkness or the dimly-reflected light from the bus. She "groped" her way, slipped and fell, sustaining severe and painful injuries. To her misfortune, she remained at work so that her return was delayed until darkness. The defendant is not responsible for her delayed home-coming or for the absence of the street light.

A person who brings about a condition or situation obviously dangerous to himself by voluntarily exposing himself to a hazard created by another, assumes the risk of injury so created and thereby relieves such other of legal responsibility for an injury resulting from such exposure. **Masters v. New York, etc. Rd. Co., 147 Oh St 293; Cf. Porter v. Toledo T. Rd. Co., 152 Oh St 463. Winkler v. Columbus, 149 Oh St 39,** involved an injury from a defect in a sidewalk occurring in daylight, but a greater degree of care is imposed upon a person exposed to a known danger at night.

One, proceeding in the dark, is not necessarily required to exercise extraordinary care, but he is required to exercise that degree of care which an ordinarily prudent person would exercise in the dark. Plaintiff knew that the icy ridge was there, she knew it was rough, slippery and hazardous. She knew she could not see it and would have to grope her way over it, with the attendant danger.

Upon the premise that the snow and ice presented a dangerous condition which the city was bound to remove and was thereby negligent in failing to remove it, it must also follow since its "nature and character" were known to the plaintiff, that it was imprudent in her to pass over it, and that she did not exercise due care in her attempt to do so. Where danger exists and the peril is known, whoever encounters it, voluntarily and unnecessarily, can not be regarded as exercising ordinary prudence, and therefore does so at his own risk. **Schaeffer v. Sandusky, 33 Oh St 246.** It is recognized that in the Schaeffer case there was a safer way which the plaintiff elected not to pursue. According to plaintiff's evidence in the instant case, there was no alternative safer route for her to use. Nevertheless she was fully aware of the hazard and the city is not to be held responsible for her delayed home-coming until dark. The rule which denies recovery because of contributory negligence on the part of an injured party is

harsh but it remains an established principle originating at common law not subject to modification by judicial interpretation. Cf. **Flury v. Central Pub. House, 118 Oh St 154, 166.**

Judgment reversed, final judgment entered for defendant, and cause remanded to the court of common pleas for execution for costs.

MILLER, PJ, concurs.
HORNBECK, J, dissents.

## DISSENTING OPINION
By HORNBECK, J.

This is not an action based on the failure of the city to remove an unusual and dangerous amount of snow and ice which had accumulated by the action of the elements. The cases defining the duty of the city in that situation have no application to this case. The obligation enjoined upon the plaintiff in **Taphorn v. Cincinnati, 96 Oh Ap 454** and **Republic Light and Furniture Co. v. Cincinnati, 97 Oh Ap 532,** is not of practical application in this case and, if charged by the trial judge, might result as did the giving of the instructions in **Jones v. Village of Girard, 111 Oh St 258.**

As no error is assigned to the charge of the court, we may assume that the jury was properly instructed as to the obligation and duty of the respective parties. Thus, all of the material issues were factual which the jury within its province had the right to and did resolve in favor of the plaintiff.

The jury must have found that the city negligently **created** the continuous high ridge of snow, leaving or making no openings from the street to the sidewalk, which caused the plaintiff to fall. That, considering the season of the year, the 28th of December, and weather conditions which were to be expected and had obtained for some time, the city should have known and therefore had notice, that the snow might thaw and freeze and cause the piles to become more hazardous. **Taylor v. Cincinnati, 3rd syl., 143 Oh St 427,** and opinion, at **page 445;** that plaintiff had to go over or through the banked snow and ice to reach her home; that no safer way was shown; that plaintiff as one of the public, in the pursuit of her business was not required, in the exercise of ordinary care, to reach her home before dark and that under all the circumstances including the darkness, which at the intersection where she alighted was unusual, she did not have full appreciation of the dangerous condition in the street and that she exercised due care for her own safety.

Although there was sharp conflict in the testimony as to practically all of the issues except that plaintiff fell and was injured, there is on this appeal but the one determinative question, the weight of the evidence. The verdict and judgment are not manifestly against the weight of the evidence. The judgment should be affirmed.