**William D. NORMAN, Appellant**
**(Plaintiff),**

v.

**CITY OF GILLETTE, a municipal corporation; Leroy A. Noecker; James D. Noecker; and Noecker Enterprises, a limited partnership, Appellees (Defendants).**

No. 5727.

Supreme Court of Wyoming.

Feb. 8, 1983.

William D. Norman and Earl R. Johnson (argued), Casper, signed the brief for appellant.

Anthony A. Johnson of Rector, Retherford, Mullen & Johnson, Colorado Springs, Colo., for appellee, City of Gillette.

John C. Brooks of Vlastos, Reeves & Murdock, P.C., Casper, for appellees Noeckers and Noecker Enterprises.

* Became Chief Justice on January 1, 1983.

Before ROONEY, C.J.*, and RAPER, THOMAS, ROSE ** and BROWN, JJ.

ROSE, Justice.

## PART I

The issue presented by this appeal is whether a city and an adjoining landowner will be liable for an injury to a pedestrian who, because of a barricade on the sidewalk, undertakes to walk in the street where he slips and falls while traversing a mound of snow and ice. The district judge granted summary judgment for both the city and the parties who owned the adjoining land around whose property the barricade was erected. The court will affirm.

The opinion of the court is divided into two parts because of a division on the court. Part I furnishes an introduction to the issues and deals with propriety of the summary judgment entered in favor of appellee-landowners, Noecker Enterprises, and Leroy A. and James D. Noecker. Part II, furnished by Justice Raper, will deal with the propriety of the summary judgment entered in favor of appellee City of Gillette.

In reviewing the propriety of a summary judgment, we look at the record from the viewpoint most favorable to the party opposing the motion, giving that party all favorable inferences to be drawn from facts contained in affidavits, exhibits, and depositions. *Dubus v. Dresser Industries,* Wyo., 649 P.2d 198 (1982); *Johnson v. Hawkins,* Wyo., 622 P.2d 941 (1981); *Miller v. Reiman-Wuerth Co.,* Wyo., 598 P.2d 20 (1979). Against this standard, the relevant facts in this appeal show that on February 9, 1979 the appellant Norman broke his leg when he stepped into a hole in a pile of snow located in the gutter of a street in the City of Gillette.

Mr. Norman testified that he was walking along a cleared sidewalk when he encountered a barricade which blocked the

** Chief Justice at time of oral argument.

sidewalk. The barricade had been constructed for purposes of protecting pedestrians from danger associated with the erection of a building on the appellees Noeckers' property. When confronted by the obstruction, the appellant stepped from the curbing into the street and, in so doing, was obligated to step over a mound of snow some 18 inches in height, whereupon his foot caught in a hole or depression causing him to fall.

Norman brought suit against both Leroy and James Noecker, Noecker Enterprises and the City of Gillette, alleging that the Noeckers and defendant Noecker Enterprises had negligently barricaded the sidewalk and that the city had failed to maintain the sidewalk and street so as to provide Norman with a safe alternate walkway. All defendants filed separate answers denying the allegations of the complaint and alleging negligence on the part of appellant. The case was submitted to the court on defendants' motions for summary judgment which were granted.

We recently reiterated the rules of this court applicable to appeals from summary judgment in *Dubus v. Dresser Industries,* supra, where we said:

"We have said many times that when reviewing the granting of summary judgment on appeal

" ' " . . . [W]e have exactly the same duty as the trial judge and, assuming the record is complete, we have exactly the same material and information in front of us as he did . . . ." *Seay v. Vialpando and Anderson,* Wyo., 567 P.2d 285, 287; *Hunter v. Farmers Insurance Group,* Wyo., 554 P.2d 1239, 1244, and *Knudson v. Hilzer,* Wyo., 551 P.2d 680, 685. *Timmons v. Reed,* Wyo., 569 P.2d 112, 115 (1977). "In contemplating an appeal from a summary judgment we must also inquire from the viewpoint most favorable to the party opposing the motion. *Timmons v. Reed,* supra, 569 P.2d at 116; *Shrum v.*

*Zeltwanger,* Wyo., 559 P.2d 1384, 1387 (1977); *Bluejacket v. Carney,* Wyo., 550 P.2d 494, 497 (1976). It is settled that, in a summary judgment proceeding, the moving party has the burden of proving the absence of any genuine issue of material fact. *Mealey v. City of Laramie,* Wyo., 472 P.2d 787, 792 (1970); *Kover v. Hufsmith,* Wyo., 496 P.2d 908, 910 (1972). Finally, we are reminded that negligence claims do not lend themselves readily to summary adjudication. See: *Gilliland v. Steinhoefel,* Wyo., 521 P.2d 1350, 1352 (1974); *Forbes Company v. MacNeel,* Wyo., 382 P.2d 56, 57 (1963)." 649 P.2d at 201.

Although there is a division of the court on the applicability of our previous decisions setting out rules covering known and obvious dangers and natural accumulations of snow and ice, *Sherman v. Platte County,* Wyo., 642 P.2d 787 (1982),[1] there is no disagreement that in order to be found negligent, in any event, it must be shown that appellees owed a duty of reasonable care to appellant that may have been breached. Of course, if neither the city nor the Noeckers owed a duty of care to Mr. Norman, then we must affirm the granting of the summary judgment. In order to make out a cause of action in negligence, a plaintiff must be able to identify a duty of reasonable care, the breach of which has caused his injury and attendant damage. See: *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981); *Beard v. Brown,* Wyo., 616 P.2d 726 (1980); *Danculovich v. Brown,* Wyo., 593 P.2d 187 (1979). We will now address the question of duty as it relates to the Noeckers.

Appellant argues that Noecker Enterprises and Leroy and James Noecker were negligent in failing to provide him with a safe walkway around the barricade, or, in the alternative, that they negligently barricaded the sidewalk. The appellees answer these contentions by denying any negli-

---

1. For other cases see: *Watts v. Holmes,* Wyo., 386 P.2d 718 (1963), and *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976). We have applied this "known and obvious—natural accumula-

tion" rule to affirm summary judgment in the past. See: *Johnson v. Hawkins,* supra, and *Bluejacket v. Carney,* supra.

gence and by asserting no duty on their part to provide an alternative walkway. We agree with the Noeckers' position in this regard.

In pursuing his claim that the Noeckers negligently barricaded the sidewalk or failed to keep the same safe for pedestrian travel, appellant relies on various ordinances of the City of Gillette. First of all, he relies on several ordinances which required the Noeckers, as abutting property owners, to remove snow from the sidewalk adjoining their property within 24 hours of the snowfall and that failure to do so would result in the city's undertaking the work for which it would charge the landowner.[2] Mr. Norman then argues that this duty imposed an obligation upon the Noeckers to provide him with an alternative walkway which, by ordinance, they were obligated to keep clear of ice and snow.

■ Appellant is correct in asserting that we have held that ordinances such as those cited impose a duty upon adjoining landowners to remove natural accumulations of snow and ice from sidewalks even though no such duty existed at common law. See: *Johnson v. Hawkins,* supra, 622 P.2d at 943.

2. The ordinances relied upon, as quoted in the record, state:
"'Section 18–12–1:
"'The owners or occupants of any real estate in the city shall be required to remove the snow from the sidewalk adjoining such property within twenty-four hours after the lay of the snow; provided, that only the snow lying on the sidewalks may be pushed into the streets; and provided further that no accumulation of snow from privately owned lands or from parking areas shall be removed and pushed into the street. (Ord. No. 489, § 1, 2–1–65.)
"'Section 18–13:
"'If snow or other obstruction is not removed from the sidewalks by the owner or occupant of abutting property in accordance with the provisions of sections 18–12 and 18–12.1, such snow or other obstruction shall be removed by the city, without notice to the property owner or occupant, and the expense of such removal shall be assessed on the property abutting the sidewalk from which the snow or other obstruction is removed and such expense shall be certified and collected as other taxes; provided, that nothing in this section contained shall be construed to relieve the owner, occupant or other person.

However, in the present case, the appellees had barricaded the sidewalk with the knowledge and permission of the City of Gillette; and once that occurred, they had no duty to keep the barricaded sections of the sidewalk free and clear of snow since the barricade was intended to prevent pedestrian traffic thereon. Therefore, the only question for our consideration asks whether the Noeckers, having barricaded the sidewalk,[3] nonetheless had a duty to provide appellant with a safe alternate walkway. If they did have such a duty, then, of course, the duty to remove snow imposed by the ordinance could be applied to the alternate walkway which the appellees intended would be utilized by pedestrians during construction of the building.

■ As a general rule, a contractor who undertakes a project in or near a sidewalk or street is under a duty to exercise reasonable care for the protection of those rightfully in the proximity of the work. However, the duty is, for the most part, one of placing sufficient barricades or warning devices around a dangerous obstruction or excavation. *Albright v. McElroy,* 207 Kan.

"[Sic] from any obligation or penalty in relation to keeping sidewalks free from accumulations of snow, ice, mud, waste and offensive material and removing the same under any provisions of this Code or other ordinance of the city.
"'It shall be the duty of the chief of police to carry out the provisions of this section. (C.O. 1948, §§ 247, 249.)'"

3. As we have already stated, appellant also alleged in his complaint that the appellees had negligently barricaded the sidewalk, but the record reflects that appellant failed to support this claim with any evidence. In light of this, we believe the trial court correctly determined that there was no material issue of fact concerning any negligence in constructing or placing the barricade on the sidewalk itself, especially considering the unimpeached testimony of appellees that the barricade met all ordinances and was erected with the city's permission. Appellant attempted to support the claim by alleging that the Noeckers had failed to acquire the necessary permits for erecting and maintaining the barricade. In our review of the record we could find no ordinance requiring such a permit.

233, 484 P.2d 1010, 1019 (1971). The duty is breached when the contractor is negligent in barricading or warning the public of danger. Notwithstanding this duty, we have found no cases that would support appellant's claim that the Noeckers were required to provide or construct an alternate walkway.

In our search of the law we came upon several cases involving accidents or injuries occurring on temporary walkways, but in each instance a city ordinance required the contractor to provide the walkways. See: *Dougherty v. Charles H. Tompkins Co.,* 99 App.D.C. 348, 240 F.2d 34 (D.C. Cir.1957); *Gaw v. Hew Construction Company,* 300 Mass. 250, 15 N.E.2d 225 (1938); 39 Am.Jur.2d, Highways, Streets and Bridges § 548, p. 955 and annotations noted. In the absence of an ordinance requiring the construction of an alternative passageway, the proper rule to be applied is that set out in *Atkinson v. Harman,* 151 W.Va. 1025, 158 S.E.2d 169, 174 (1967):

"It is contended by the plaintiffs that the defendant contractors were negligent in failing to close the street and sidewalk during this construction. They assert that failing to so act placed them under a duty to construct a temporary walkway around the obstruction in the sidewalk and that their failure to provide such temporary walk constituted a breach of that duty. In the syllabus of *Nester v. United Foundation Corporation and Town of Ridgeley,* 136 W.Va. 336, 67 S.E.2d 533, 29 A.L.R.2d 871, this Court said: 'No duty exists on the part of a contractor to provide or maintain a temporary way or detour around an obstruction of a street within a municipality, resulting from excavation work done by the contractor with permission of the municipality, in the absence of a contract or special circumstances.' "

We also find the rationale expressed by the Georgia appellate court in *Hardin v. Barrett,* 122 Ga.App. 156, 176 S.E.2d 455 (1970) to be persuasive. There, the defendants had contracted with a city to replace a portion of the sidewalk, and, in performing the work, barricades extending to the curbing had been constructed around the part of the walkway that had been removed. While walking down the sidewalk, the plaintiff came upon the barricade and proceeded to walk in the street where she fell in a hole, injuring herself. She sued the contractor, alleging negligence in failing to provide an alternative walkway. In affirming the granting of summary judgment, the court said:

"* * * Other jurisdictions have frequently held in instances where a plaintiff was injured after electing to walk within the street area where the sidewalk was blocked off that a jury question was presented as to the negligence of the city in the manner in which barricades were erected, or negligence of the abutting property owner, the contractor doing the work, or the owner of an automobile parked on the sidewalk in wrongfully barricading the sidewalk but, except in actions involving defendant municipalities, we have found no case where recovery was allowed unless there existed some evidence of negligence in failing to barricade, or in maintaining the barricade or other obstacle in a negligent manner." 176 S.E.2d at 456.

The court went on to hold that the defendant contractor had no control over the street, nor could he have appropriated the street for use as an alternative walkway. Therefore, the plaintiff could not recover unless the contractor had negligently maintained the barricade, and there was no proof to support such a conclusion.

Given these and other persuasive authorities, we are of the opinion that appellee-Noeckers did not owe a duty to appellant to provide an alternative walkway for Mr. Norman, and, since appellant failed to establish any negligence in maintaining or erecting the barricade, supra fn. 3, the granting of summary judgment in favor of Noecker Enterprises and Leroy and James Noecker was proper.[4]

4. The conclusion we reach is supported by the

record notwithstanding the question of whether

Next, we reject appellant's contention that the trial judge erred in refusing to grant his Rule 40.1(b)(2), W.R.C.P., motion for removal of the trial judge for cause. Appellant failed to attach the necessary affidavit to his motion as required by the rule.[5]

RAPER, Justice.

## PART II

We turn now to appellant's argument that the district court erred in granting appellee City of Gillette's motion for summary judgment. As to the City of Gillette, this case can be characterized as nothing more than the usual slip and fall case in which an unfortunate accident occurred in the presence of a known and obvious danger presented by a natural accumulation of snow and ice. This court has dealt with similar cases on numerous occasions. *Sherman v. Platte County,* Wyo., 642 P.2d 787 (1982); *Johnson v. Hawkins,* Wyo., 622 P.2d 941 (1981); *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976); *LeGrande v. Misner,* Wyo., 490 P.2d 1252 (1971); *Watts v. Holmes,* Wyo., 386 P.2d 718 (1963).

In *Sherman v. Platte County,* supra, we summarized our views in regard to slip and fall cases involving the known and obvious danger of a natural accumulation of snow and ice when, after citing and quoting from *Johnson, Bluejacket, LeGrande* and *Watts,* supra, we said:

"In reality, it is apparent that these cases have involved two rules. First there is the rule that no duty exists which requires either the removal of an obvious danger or a warning of its existence. Second is the rule that no duty exists to remove the natural accumulation of snow and ice. The latter rule broadens the protection accorded possessors of land under the former rule. It covers that class of cases where the ice and snow naturally accumulate in a fashion where there is a lurking danger, i.e., the ice is covered by the snow. However, for that rule to apply, the accumulation must be the result of natural forces and not caused by the possessor of the land. Nonetheless, whenever the danger is obvious or at least as well known to the plaintiff as it is to the defendant landowner, there exists no duty to remove the danger or warn the plaintiff of its existence." 642 P.2d at 789.

The facts before the court in this case make it clear that the aforementioned rules apply to deny appellant's claim.

In his deposition, appellant admitted that he was aware of the danger presented by the snow and ice he attempted to traverse. In fact, he admitted that the way into the street and around the barricaded portion of the sidewalk was clear within three feet of where he slipped and fell, yet he chose to cross the snow and ice which caused his fall. A photocopy of a photograph taken of the accident scene on the following day, included in the record by appellant, confirms the fact that the street and sidewalk were virtually clear everywhere except right next to the barricaded area. It is obvious that, apart from snow and ice being a known and obvious danger as a matter of law, in this case it was also a matter of fact. Appellant was aware of the danger presented by the snow and ice on which he slipped, and he consciously chose to take that more dangerous route rather than a clear path.

As to the nature of the snow and ice appellant slipped on, appellant referred to it in his affidavit in opposition to the motion for summary judgment as a "drift" of snow. Throughout his deposition, appellant referred to the snow and ice in question as that snow the City of Gillette had failed to "clear off" or "clean off" of the street. From that, it can only be concluded that the

or not the barricade could be considered a proximate cause of appellant's injury. See: *Beltran v. Stroud,* 63 Ariz. 249, 160 P.2d 765 (1945); *Johnson v. Rockford,* 35 Ill.App.2d 107, 182 N.E.2d 240, 93 A.L.R.2d 1178 (1962).

5. We also note that appellant failed to support this argument with any cogent authority and, in fact, argued with respect to Rule 40.1(b)(1), W.R.C.P., rather than Rule 40.1(b)(2), W.R.C.P., which was the subject of his actual motion filed with the trial court.

snow and ice referred to were nothing more than a natural accumulation which had not been removed. We were unable to discover in the record anywhere where appellant alleged that the snow and ice he slipped on were anything but a natural accumulation. At one point in appellant's deposition grading operations by the City of Gillette were alluded to in connection with the snow and ice in question. That colloquy, however, did not indicate that the ice and snow were other than a natural accumulation. Even after examining the photocopy of the picture referred to earlier, we are unable to say that the snow in question was anything more than a natural accumulation which had not been cleared because of its close proximity to the barricade.

In fact, appellant's complaint against the City of Gillette is not aimed at any negligence in creating an artificial or unnatural accumulation of snow. He complains that the city was negligent in allowing the sidewalk to be barricaded so that he was forced into the street to continue his journey. We have already held that there was no negligence in allowing the barricade. We now hold, from the undisputed evidence in the record, that the snow or ice he slipped on was nothing more than a natural accumulation.

Appellant cites *Bieber v. City of Newcastle,* 242 F.Supp. 457 (D.C.Wyo.1965) for the proposition that the City of Gillette had a duty to clear the street where he slipped and fell. That case dealt with an uncovered, nine-foot deep hole in a sidewalk with which the unsuspecting plaintiff had an unfortunate encounter. Judge Kerr, citing case law from this court, stated:

"In Wyoming, the municipal corporation owes a duty to the traveling public to keep its streets and sidewalks in a reasonably safe condition and in reasonably good repair for the traveling public. * * *" 242 F.Supp. at 458.

That case, however, did not deal with the particular problem presented by snow and ice which are natural conditions that prevail at the time of year this accident occurred and is, therefore, of little value here.

As the court said in *Lyman v. Town of Cornwall,* 30 Conn.Sup. 610, 318 A.2d 129, 131 (1973), and with which we agree, in rigorous climates—like ours in Wyoming—the duty of cities and towns, with respect to snow and ice on public ways, differs from the general duty; it is, and must out of necessity be, very limited.

In *Smith v. Town of Lander,* 67 Wyo. 121, 215 P.2d 861 (1950), this court addressed the duty of municipalities in regard to snow and ice on streets and sidewalks. This court held, there, that cities are under no obligation to keep crosswalks and streets clear of natural accumulations of ice, slush, or snow; to require otherwise would be impractical and cause severe financial hardship. The court reasoned that:

" * * * 'It is generally held that a municipality or other public authority is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes, provided the street or walk is properly constructed, and no other defect is shown. The reasons commonly given for so holding are that it is not one of the law's reasonable requirements that a municipality should remove from the many miles of walks the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things, and that when these conditions exist, they are generally obvious, so that travelers know of them and assume the risk. * * *'" 215 P.2d at 863.

See also, *Morrison v. City of Anchorage,* Alaska, 390 P.2d 782 (1964) (no liability for accumulation of slush next to curb); *Nelson v. City of Tacoma,* 19 Wash.App. 807, 577 P.2d 986 (1978) (slippery condition of street due to natural causes not actionable; city not insurer or guarantor of safety of travelers under those conditions); and *West v. Provo City Corp.,* 27 Utah 2d 306, 495 P.2d 1251 (1972) (cities not liable for sidewalk injuries caused by a natural accumulation of ice and snow).

From those decisions and our review of the law elsewhere, we are unable to find

where the City of Gillette had a duty to remove the natural accumulation of ice and snow on which appellant slipped. It is clear that where the forces of nature combine to create the special problem presented by snow and ice, municipalities cannot be held to a strict duty to remove every potential danger caused by said snow and ice. The thrust of our past decisions is that the danger presented by accumulations of snow and ice does not generally create liability because of their natural character. We refuse to now make the City of Gillette an insurer for all who slip and fall on ice and snow accumulated on its public ways. Even if we found that the City of Gillette had a duty to clear a way around the barricaded sidewalk, we would have to say that the record shows that it admirably met any such duty. Appellant had to literally seek out the dangerous route he took rather than follow the acknowledged clear route around the barricade.

Appellant's regrettable accident was, as we have indicated, nothing more than a slip and fall case in which our oft-stated rules apply to deny his recovery against the City of Gillette.

Affirmed.

ROSE, Justice, with whom THOMAS, Justice, joins, dissenting in part.

I dissent from "Part II" of the majority opinion affirming the granting of the summary judgment in favor of the City of Gillette. In my opinion, the record supports the existence of a material issue of fact concerning the negligence of the City and, for the reasons contained in this dissent, I would have reversed the trial court's decision in that regard.

Appellant Norman has alleged in his complaint that the City of Gillette was negligent in permitting the sidewalk to be barricaded, and in failing to maintain the street so that appellant had a safe alternate walkway. The City responded to this complaint by denying all negligence on its part and relied on appellant's deposition in support of its motion for summary judgment. My review of the record and the case law on the subject indicates that we should hold that the granting of the summary judgment in the City's favor was error.

It is well settled that a municipality owes a duty to the traveling public to keep its streets and sidewalks in good repair and in reasonably safe condition. *Bieber v. City of Newcastle*, 242 F.Supp. 457 (D.C.Wyo.1965). In discharging this duty, a municipality or its agents must exercise reasonable or ordinary care to see that its public ways are maintained in a condition which makes travel in the usual modes and in the customary manner reasonably safe. 19 McQuillin, Municipal Corporations § 54.35e, p. 85 (3rd Ed. 1967). Where ice and snow on the public sidewalk is concerned, the general rule is:

"According to most, but not all decisions, a municipality is liable for injuries sustained on snowy or icy sidewalks where the ice and snow has formed into ridges or drifts, in a rough or uneven condition, or where the snow or ice is permitted to remain on the sidewalk and to be traveled over by pedestrians for such a length of time that it became rough, rounded, uneven and irregular, rendering the walk dangerous for travel. Indeed, an early case declared that snow and ice, though existing for a long time, do not charge the city with negligence unless accumulations take the shape of ridges or hills.

"An icy ridge on the sidewalk, to be actionable, must be sufficiently substantial to constitute an obstruction dangerous to the public. Therefore, a municipality is liable only for unusual and especially dangerous formations of snow and ice on a sidewalk, while it is not liable for general conditions produced by alternate freezing and thawing. Where snow and ice on a sidewalk are permitted to remain until the surface thereof, by thawing and freezing, or by the reason of travel thereover, has become rough, uneven, rigid and slippery, so as to become an individualized and comparatively isolated obstruction to travel, and where this condition had existed for such a length of time that it had become known to the public au-

thorities or ought to have become known to them in the exercise of reasonable vigilance, the municipality will be liable for damages to one injured while attempting, in the exercise of ordinary care, to pass over such sidewalk. However, no precise limit can be established to determine what height and extent an icy ridge must reach in order to be actionable as a defect; but there is some merit in the suggestion that, under this rule, the ice, in order to constitute a defect must, while adhering to the walk, assume a form which would be a structural defect if the walk were itself so constructed.

"The thickness of the snow or ice, it seems, is of no consequence." (Footnotes omitted.) 19 McQuillin, Municipal Corporations, § 54.84e, pp. 235–237.

Assuming this to be the proper rule identifying the municipalities' duty with respect to ice and snow on sidewalks, the issue here is whether the same duty is owed by the municipality when the pedestrian is forced, with permission of the municipality, to use the public street as a walkway.

Appellees have devoted much of their briefs and oral argument to positioning this case within the boundaries of our prior slip-and-fall holdings. Unlike the majority, I am convinced that the facts at bar distinguish this case from most of these previously announced rules.

In *Sherman v. Platte County,* Wyo., 642 P.2d 787 (1982),[1] the appellant suffered an injury to her ankle when she slipped and fell on a patch of ice in a parking lot. In upholding the verdict of no negligence upon the part of either the plaintiff or the defendant, we summarized the Wyoming rules as follows:

"* * * First there is the rule that no duty exists which requires either the removal of an obvious danger or a warning of its existence. Second is the rule that no duty exists to remove the natural accumulation of snow and ice. The latter rule broadens the protection accorded possessors of land under the former rule. It covers that class of cases where the ice and snow naturally accumulate in a fashion where there is a lurking danger, i.e., the ice is covered by the snow. However, for that rule to apply, the accumulation must be the result of natural forces and not caused by the possessor of the land. Nonetheless, whenever the danger is obvious or at least as well known to the plaintiff as it is to the defendant landowner, there exists no duty to remove the danger or warn the plaintiff of its existence." 642 P.2d at 789.

These concepts must be considered in conjunction with what was said in *Johnson v. Hawkins,* Wyo., 622 P.2d 941 (1981), where we held that, in the absence of an ordinance, adjoining landowners have no duty to keep the sidewalks in front of their premises clear of natural and obvious accumulations of snow and ice. *Johnson v. Hawkins,* supra, 622 P.2d at 943. These cases stand for the proposition that injured plaintiffs in Wyoming can only recover for slips and falls which result from unnatural accumulations of snow and ice that are shown not to have been known by or obvious to the plaintiff.

The appellees attempt to fit the facts of this case into the confines of the above-quoted rule by interpreting Mr. Norman's deposition to say that he fell only because of the snow and ice,[2] that he saw the mound and that he knew a dangerous condition was created thereby. While the majority opinion embraces that contention, under the facts as developed in appellant's deposition I cannot agree.

1. For other cases see: *Watts v. Holmes,* Wyo., 386 P.2d 718 (1963); *Bluejacket v. Carney,* Wyo., 550 P.2d 494 (1976). We have applied this "known and obvious—natural accumulation" rule to affirm summary judgments in the past. See: *Johnson v. Hawkins,* Wyo., 622 P.2d 941 (1981), and *Bluejacket v. Carney,* supra.

2. Mr. Norman testified:

"Q. Did you fall because of the snow and ice?

"A. Yes, I did. That's what caused it."

The problem with the reliance by appellees and the majority of this court on this deposition testimony is that Mr. Norman also testified that he fell because he was forced into the street by the barricade and, while attempting to negotiate a mound of snow, his foot caught in a depression or hole, causing him to fall.[3] The record further reveals that the snow in the gutter may have been piled there through plowing or grading and, although appellant knew from the footprints that others had traveled the same route, he looked but could not see the hole or depression which caused his fall. Given these facts, I am of the opinion that a material issue of fact was structured with respect to whether or not the accumulation of snow was natural and whether or not it presented a known and obvious danger to appellant. Unlike the majority, I cannot say that this case falls within the rule of *Sherman v. Platte County,* supra, so that the granting of summary judgment was appropriate.

Being mindful of our previous conclusion having to do with the questionable application of the known-and-obvious-danger or natural-accumulation rules, I view the important question in this part of the appeal to be whether or not the City of Gillette's duty is different—given the fact that Mr. Norman fell in the street—than it would have been had he fallen on the sidewalk. There being no Wyoming case law on this point, I will look to other jurisdictions for my resolution to this question.

In *Mills v. City of Springfield,* 166 Ohio St. 412, 75 Abs. 150, 142 N.E.2d 859 (1956), the plaintiff fell and was injured while attempting to traverse a large mound of snow caused by plowing activities, and she brought suit against the city alleging negligence. In denying recovery, the court rejected plaintiff's contention that the city was on notice of the dangerous condition, but observed that the city could be responsible for creating dangerous conditions hazardous to pedestrians lawfully in the streets. In explaining this the court stated:

"* * * After all, pedestrians have the right to use a street when necessity therefor arises, and it would seem that a city should be obligated to exercise the same degree of care with respect to highways over which pedestrians are required to walk as that which is applicable to sidewalks." 142 N.E.2d at 864.

Similarly, in *Bacsick v. Barnes,* 234 Pa.Supr. 616, 341 A.2d 157 (1975), the court held that the city could be liable for an injury suffered by a pedestrian where, when the pedestrian was forced into the street because of a blocked sidewalk, he was struck by a car. The court reasoned that hills and ridges of snow caused by removal activities are unnatural rather than natural accumulations, and if allowed to remain for an unreasonable length of time the city is on notice of the danger posed to pedestrians. Id., 341 A.2d at 160–161. Finally, in *Squillace v. Village of Mountain Iron,* 223 Minn. 8, 26 N.W.2d 197 (1946), the court upheld an award of damages to the plaintiff who was compelled to walk in the street because the sidewalks were blocked by snow. The court first noted that the municipality had the exclusive duty to keep its streets and sidewalks safe for travel, and then went on to conclude that the duty to keep sidewalks safe can be applied to the street area when a pedestrian is compelled to travel therein:

"It is true, the foregoing decisions relate to the obligations of a city with reference to its walks rather than to its streets. The obligations placed upon a municipality in keeping its walks reasonably safe for pedestrian travel might not necessarily be applicable insofar as its streets are concerned. Here, however, because of the failure of the municipality to clear

---

3. Appellant testified as follows:

"Q. Bill, let me ask you to explain, I guess, in one sentence why you fell?
"A. Why I fell?
"Q. Yeah.

"A. Because I was forced to step off the— off the sidewalk into a snow, icy area *with holes in it,* and as I stepped off the curb, my foot went out from underneath me and it caught." (Emphasis added.)

the sidewalk which plaintiff ordinarily would have used in going to his home, it became necessary for him to use the street immediately adjoining it. Under such circumstances, it would seem that defendant was obligated to exercise the same degree of care with reference to streets which pedestrians were forced to use in lieu of sidewalks as that which would be applicable ordinarily to sidewalks. In substance we have so held in *Thoorsell v. City of Virginia,* 138 Minn. 55, 58, 163 N.W. 976, 977, where we stated: ' * * * It is true that the use of the street outside of the sidewalk is primarily for traffic by teams and other vehicles, and the use of the sidewalk primarily for pedestrians, but pedestrians still have the right to use the street when the necessity arises. *It has never been held, to our knowledge, that they have not such right, or that the duty of a municipality to use reasonable care to keep the streets in a safe condition does not extend to making them reasonably safe for pedestrians who have occasion to be upon that portion of the street ordinarily traveled by vehicles.'* (Italics supplied.) See, also, *Barrett v. City of Virginia,* 179 Minn. 118, 228 N.W. 350; *Mathieson v. City of Duluth,* 201 Minn. 290, 276 N.W. 222." 26 N.W.2d at 203.

See also: *Nelson v. City of Tacoma,* 19 Wash.App. 807, 577 P.2d 986 (1978), citing the rule of *Squillace v. Village of Iron Mountain,* supra; Annot., 93 A.L.R.2d 1187.

Applying these authorities to the present case, I am of the opinion that the record reflects material issues of fact with respect to the liability of the City of Gillette for appellant's injuries. The evidence is clear that appellant was compelled to walk into the street as a result of an obstruction or barricade on the sidewalk placed thereon with the City's permission. It is also undisputed that the weather in the area had been cold and snowy most of January and early February of 1979, and that the City was on notice that pedestrians would be compelled

to enter the street to pass by the area enclosed by the barricade. Finally, the uncontroverted facts establish that the mound was possibly caused by plowing activities, and that appellant fell due to a hole that he alleges he did not and could not see. I can only conclude from all of this that there were material issues of fact concerning whether or not the City had breached its duty to appellant to keep the street in a reasonably safe condition for pedestrian travel. The granting of the summary judgment in favor of the City of Gillette was erroneous; there are sufficient questions of fact to require a trial on the matter.

THOMAS, Justice, dissenting, with whom ROSE, Justice, joins.

I agree with the other members of the court that the summary judgment entered in favor of Noecker Enterprises, Leroy Noecker and James Noecker must be affirmed. I join with Justice Rose, however, in his dissent to Part II of the court's majority opinion. In addition I have a perspective of my own which I have concluded requires a separate statement.

In his dissenting opinion, at footnote 3, Justice Rose quotes the following testimony by deposition of the plaintiff:

"Q. Bill, let me ask you to explain, I guess in one sentence why you fell?

"A. Why I fell?

"Q. Yeah.

"A. Because I was forced to step off the—off the sidewalk into a snow, icy area *with holes in it,* and as I stepped off the curb, my foot went out from underneath me and it caught." (Emphasis added.)

Perhaps it is simply because I am less discerning than my brothers on the court, but I am convinced that one could infer from this testimony that the holes were in the street, not in the snow. My perception of Part II of the majority opinion is that it depends upon a factual conclusion that there was no defect in the surface of the

street and that the only obstacle encountered by the appellant was the pile of snow. My position is that if there were a hole in the street then there would be no question of the right of the appellant to a jury trial. In deciding the case as the majority does the court is deciding a question of fact, i.e., were the holes in the snow or in the street? Because of the presence of this question of fact I then rely upon the universal rule that a summary judgment should not be granted or sustained unless there is no issue of material fact. This issue of fact is material, and it exists. The summary judgment in favor of the City of Gillette should not be sustained.