MAY SMITH,

*Plaintiff and Appellant,*

vs.

TOWN OF LANDER,

*Defendant and Respondent.*

(No. 2447; March 14th, 1950; 215 Pac. (2d) 861).

For plaintiff and appellant the cause was submitted on the brief and oral argument of R. Lauren Moran of Riverton, Wyoming.

For defendant and respondent the cause was submitted on the brief of Arthur E. Oeland and George F. Dobler of Lander, Wyoming and oral argument by Mr. Oeland.

124

126

## OPINION.

RINER, Chief Justice.

The District Court of Fremont County rendered a judgment against the plaintiff, May Smith, in an action brought by her against the plaintiff Town of Lander in that court. Dissatisfied with this ruling she has brought the matter here by direct appeal to have the record in the case reviewed by us. As will be presently seen, the only question which is before this court for decision is whether, as a matter of law, the plaintiff's petition states facts sufficient to authorize a judgment against the defendant Town. In order to determine this question it will be necessary only to set forth part of plaintiff's initial pleading. The parties will usually hereinafter be referred to as aligned in the District Court.

After alleging that the defendant is a "body corporate and politic" organized under Wyoming law, plaintiff's pleading alleges verbatim as follows:

"That in the latter part of December, 1947, a heavy snowfall, consisting of about eight inches, fell on the town of Lander, and on the principal streets and sidewalks and public thoroughfares thereof to a depth of several inches; that nothing was done at the time or at any time up to and including the 3rd day of January, 1948, by the defendant to remove the snow which had thus accumulated on the said streets, sidewalks and thoroughfares; that by the normal traffic of individuals and vehicles over the said public thoroughfares in the days immediately following, and particularly on Main Street and the streets immediately adjacent thereto, the said snow became packed and hard and of the consistency of ice; that during the days immediately following, and up to and including the 3rd day of January, 1948, the temperatures varied from freezing and below at night and through part of the morning to thawing temperatures through the middle

of the day; that water and slush formed from the thawing of snow during the day froze at night, forming a surface of hard slippery ice, dangerous to pedestrians and vehicles.

"That defendant had knowledge of this condition, and having such knowledge, took no action to remove snow, or slush, or to remedy the said dangerous condition of the streets and public thoroughfares of the said Town of Lander.

"That plaintiff is and for several years last past has been a resident of the town of Lander and employed therein.

"That on the 3rd day of January, 1948, at the hour of ten o'clock in the morning, or shortly thereafter, plaintiff left her place of employment in the coffee shop of the Noble Hotel and was proceeding cautiously in a westerly direction on Main Street on the north side thereof.

"That at said hour of ten o'clock in the morning the ice had not begun to thaw appreciably, and the streets and crossings were covered with ice frozen smooth and hard, without sand or ashes or cinders placed thereon to eliminate or reduce the danger.

"That while thus proceeding cautiously, and while crossing 3rd street on Main Street, between the Noble Hotel and Baldwin's Store, and at a point in the crossing just west of the center of said crossing, plaintiff because of the dangerous and icy condition of the streets and crossing as aforesaid, slipped and fell with great force against and upon the ice-covered street."

The remainder of plaintiff's petition sets out that she was severely injured by this fall, her damages as claimed in consequence thereof, the rejection of her verified claim by the defendant, and her itemized grounds for recovery against the defendant.

To this petition the defendant interposed a general demurrer that said petition:

"does not contain facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant."

The demurrer was duly argued, submitted to, and sustained by the court. Thereupon as the judgment in question recites:

"Plaintiff by her attorney having refused to plead further, and electing to stand on her Petition, the Court found that judgment should be entered for the Defendant and that Plaintiff take nothing by her Petition.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED: That Plaintiff, May Smith, take nothing by her Petition, and that Defendant recover its costs."

Plaintiff saved her exception to this ruling and has brought the cause here as above recited.

It has been recently pointed out by this court that where a pleading omits to state pertinent facts they will be considered as adverse to the pleader under the general presumption that a party will set forth all the facts favorable to his case. Carey & Brother vs. City of Casper, 66 Wyo. 437, 213 Pac. 2d 263, 268 and cases cited; and also that where a trial court rules a petition to be insufficient and plaintiff elects to plead no further it must be presumed that plaintiff has stated his cause in the manner most favorable to himself and that additional facts essentially requisite to a statement of a cause of action entitling him to relief do not exist. Carey & Brother vs. City of Casper, supra, p. 269 and cases cited. We mention these principles in the law of procedure as it is apparent from what has been above set forth from plaintiff's petition that there is no claim advanced or facts pleaded which show that the defendant had defectively in any manner constructed its streets or its crosswalks at the place where the accident happened.

It is to be observed that the injuries the plaintiff suffered came through certain natural and normal conditions which at the time of the accident and the season of the year prevailed.

The pleading asserts that a "heavy snowfall" of about eight inches fell on defendant's streets and thoroughfares "the latter part of December, 1947", which could mean on December 31, 1947 as the specific date or dates of the snowfall do not appear to be stated; that the "normal traffic of individuals and vehicles" over the streets in the days immediately following the snowfall packed this snow *hard "and of the consistency of ice"*; that during these days to and including the day of the accident (January 3, 1948) "the temperatures varied from freezing and below at night through part of the morning, to thawing temperatures through the middle of the day"; that "water and slush formed from the thawing of snow" froze at night and formed a "surface of hard slippery ice".

It is averred that defendant knowing these facts did not act to remove the snow or slush; that about ten o'clock in the morning on the day of the accident when the "ice had not begun to thaw appreciably and the streets and crossing were covered with ice frozen *smooth and hard"*, the plaintiff slipped and fell "upon the *ice covered street"* and was injured.

Under these conceded conditions prevailing on defendant's streets and crosswalks, was it the duty of the defendant municipality to remove this hard snow packed so as to be "of the consistency of ice" and which was "smooth, hard, and slippery" in order that pedestrians should not fall, thereby being hurt? We do not think the law casts any such heavy burden upon our cities and towns. If it did they would shortly be

bankrupt on account of the expense incurred each fall, winter and spring season of each year. It is well known that trucks and passenger cars driving over streets and crosswalks constantly carry water and slush by their revolving tires upon the crosswalks. To meet this condition of affairs it would be obligatory upon municipal officials to keep a large force of men on duty at each crcosswalk to maintain them clear of water and slush after every vehicle had passed, obviously an impossible and impractical task. Even if that could be done still there would be no assurance that the freezing temperatures prevailing over night and early morning would not render all this work on the part of the municipality unavailing to prevent accidents such as plaintiff's petition describes. But the law, as we find it is not so unreasonable.

7 McQuillin Municipal Corporations (2d Rev. Ed.) p. 257, Section 2983 says that:

"The duty of a municipality in regard to snow and ice on sidewalks does not apply to the same extent to crosswalks."

So 25 Am. Jur. 797, 798, Section 517 similarly says:

"A municipality is not required to keep the streets between the sidewalks free from snow and ice at all times. Nor are the municipal authorities required to exercise the same degree of care to guard against accidents from snow and ice on the driveways as on sidewalks."

And the same text pp. 799 and 800, Section 519 asserts that:

"It is generally held that a municipality or other public authority is not liable for injuries resulting from the general slipperiness of its streets and sidewalks due to the presence of ice and snow which have accumulated as a result of natural causes, provided the street or walk is properly constructed, and no other defect is

shown. The reasons commonly given for so holding are that it is not one of the law's reasonable requirements that a municipality should remove from the many miles of walks the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things, and that when these conditions exist, they are generally obvious, so that travelers know of them and assume the risk. Under the general rule, a municipality is, ordinarily, under no obligation to sprinkle its sidewalks or streets with ashes, sand, or other substances, to remedy a general condition of slipperiness due to natural causes."

And 43 C. J. 1024-1025, Section 1802 is of similar purport:

"A municipality is not held to as strict accountability for permitting ice and snow to accumulate on a crosswalk as on a sidewalk, but it must exercise reasonable or ordinary care to keep its crosswalks in a reasonably safe condition, and what amounts to such care will depend on the circumstances of each case, more care being required where the danger is great than where it is slight. A municipality is not bound to keep its crosswalks absolutely free from snow and ice, and injury due to the mere slippery condition of the crosswalk will not render the municipality liable, even though the street on which a smooth coating of ice has formed is of unusual slope or construction."

Balzer vs. City of New York, 279 N. Y. 742, 18 N. E. 2d 689 was an action by Balzer against the City for injuries sustained when plaintiff fell on snow and ice on a crosswalk. The claim advanced for plaintiff was that he slipped on ice in the roadway when he was "crossing 139th Street at its intersection with 87th Avenue in the Borough of Queens", New York City. He alleged that the City was guilty of negligence in "allowing the snow to remain for a long period of time whereby the same froze at the place where the said accident took place." Plaintiff appealed from a judgment of the Appellate Division (254 App. Div.

772, 5 N. Y. S. 2d 23) which reversed a judgment for plaintiff and dismissed the complaint because of insufficiency of the claim set forth. Affirming the judgment of the Appellate Division the per curiam opinion reads: "Judgment affirmed with costs on the ground that no negligence has been proved".

In Selzer vs. City of New York, 266 App. Div. 880, 42 N. Y. S. 2d 872, the action against the City was by an infant to recover damages for personal injuries. The Appellate Division reversed the trial court where the plaintiff had had judgment, the reversal being predicated on the law and the complaint was ordered dismissed on the law with costs. The intermediate appellate court in its memorandum stated:

"The injuries were received when plaintiff slipped and fell on ice on a crosswalk at a street intersection. Nine days before the accident occurred there was a heavy fall of snow and sleet, followed by rain and freezing weather. Plaintiff failed to show actionable negligence by defendant." (Citing authorities).

On further appeal to the court of appeals of the state this action of the Appellate Division was affirmed (292 N. Y. 560, 54 N. E. 2d 685).

The subsequent case of Fischetti vs. City of New York, 269 App. Div. 948, 57 N. Y. S. 2d 913 announced a similar ruling citing many supporting authorities. The facts appearing in the case were: That a woman slipped and fell on an icy crosswalk at a street intersection six days after a heavy fall of snow and sleet which was followed by almost continuous freezing weather. It was held that she could not recover damages from the City for the resulting injuries in absence of evidence establishing the City's negligence.

In City of Rome vs. Potts, 45 Ga. App. 406, 165 S. E. 131 plaintiff sued for personal injuries due to his fall on a crosswalk under the following circumstances as detailed by the court:

"that 'several inches' of snow had fallen, and the city had negligently permitted it to accumulate and remain in the crossway or walkway across Broad street, which was marked out between parallel lines; that 'said snow, after having been trampled under the traffic on the street, froze and became slick as ice'; that petitioner's view of the street directly under his feet was obscured by a sack full of chickens he was carrying; that the ringing of the traffic light bell attracted his attention 'away from the walkway or crossway, and petitioner did not see the ice and snow'; and that he slipped upon the same and fell to the street, receiving injuries for which suit was brought. By amendment plaintiff alleged, that the city of Rome is so climatically situated that snow and ice are not permanently on the streets; that about one-fourth of the way across Broad street was shaded, 'and the snow had not melted in that part of the crosswalk and had been permitted to remain in the crosswalk and had become uneven in its surface by reason of pedestrians and vehicles passing over the same, and had become a dangerous obstruction in said crosswalk, all of which was unknown to petitioner, but had been in said condition for a period of at least three days'. Petitioner alleged that the municipality was negligent in permitting the ice and snow to accumulate in the crossway; in permitting it to remain there more than a reasonable time after having knowledge of the same; in failing to give a reasonable time between changes in the traffic light; in failing to remove the snow and ice; and in permitting the crossway to become obstructed with snow and ice."

The defendant demurred generally and specifically to the original petition and objected to an allowance of the amendment mentioned in the foregoing excerpt. However, the amendment was permitted and the general demurrer was overruled. Holding this action on

the part of the trial court to be error and reversing a judgment for the plaintiff the court in part said:

"In our opinion neither the allegations of plaintiff's original petition nor those of his petition as amended show a sufficiently defective or dangerous condition of the crosswalk to impose any liability upon the city. The original petition alleges that 'said snow after having been trampled under the traffic in the street, froze and became slick as ice.' The snow was not alleged to be rounded, slanting, ridged, or in any other unusual or dangerous condition. Defendant demurred to the foregoing as being insufficient, whereupon plaintiff, by amendment, alleged that 'the snow had not melted in that part of the crcosswalk and had been permitted to remain in the crosswalk, and had become uneven in its surface by reason of pedestrians and vehicles passing over the same, and had become a dangerous obstruction in said crosswalk'. The allegation that the snow, under all the facts stated, had become a 'dangerous obstruction,' is a conclusion of the pleader. It had not melted, but had become 'uneven' because of passing vehicles. We think no defective condition or dangerous obstruction sufficient to create liability under the rules of law is shown by the petition as amended."

Discussing the subject of slipperiness caused by either ice or snow on the sidewalk is Smyth et al vs. City of Bangor, 72 Me. 249 the court used this language:

"And we regard it as now well settled that mere slipperiness caused by either ice or snow, is not a defect for which a town or city is liable.

"In this cold climate, where ice and snow cover the whole face of the earth for a considerable portion of the year, such an inconvenience ought not, and rightfully can not, be regarded as a defect. No amount of diligence can keep our streets and sidewalks at all times free from ice and snow; and the latter, when trodden smooth and hard, is nearly, and sometimes quite, as slippery as ice; and travelers will often slip and fall when no one is to blame. To hold towns and

cities responsible for such accidents would practically make insurance companies of them. A block of ice may constitute a defect the same as a block of wood or stone. So a ridge or hummock of ice, or snow, may constitute a defect the same as a pile of lime, or sand, or mortar, upon the sidewalk would. But we regard it as now well settled that mere slipperiness of the surface of a highway or sidewalk, caused by either ice or snow, is not a defect for which towns and cities are liable."

The case of Evans vs. City of Concordia, 74 Kans. 70, 85 Pac. 813 was another case where the court had occasion to review the subject discussed in the Maine case just cited, viz., slipperiness due to ice and snow on streets or walks. Referring to the case of Reedy vs. Brewing Association and City of St. Louis, 161 Mo. 523, 61 S. W. 859 and the position taken by the Missouri court on the matter this was said:

"The court refers to the well-established doctrine that a city is not liable for injuries caused by smooth and slippery ice, where it has formed generally upon the streets and walks, and where no special defect is shown, and mentioned two well-founded reasons for it: First, it is not one of the law's reasonable requirements that a city should remove from the many miles of walks the natural accumulation of ice and snow because such a requirement is impracticable from the nature of things; second, because when these conditions exist generally they are obvious, and every one who uses the sidewalks at such times is on his guard, warned by the surroundings and the danger of slipping at every step. These reasons meet with our approval. To hold otherwise would cast upon cities a burden for which they are not responsible and greater than their ability to provide for. This rule has reference to a general accumulation of ice or snow from natural causes, where no other defect in the walk is shown, except the natural slippery condition of the ice or snow."

In O'Donnell vs. City of Butte, 65 Mont. 463, 211 Pac. 190, it appeared that the complaint charged that

the defendant city on the day of the accident and for more than five days preceding:

" 'did negligently, carelessly, and knowingly . . . allow and permit snow and ice to accumulate and remain on the said crosswalk along the northerly side of said Broadway across Hamilton street, and especially at a point about 7 feet from the curbing along the sidewalk on the east side of Hamilton street, the surface of which said accumulation of snow and ice during all of said time was rough, rounded, rigid, uneven, slippery, and slanting.' "

It was also alleged in substance as the court states in its review of the plaintiff's pleading:

"that Hamilton street, as it approaches Broadway street, has a considerable down grade, and that during the middle of the season the snow and ice thereon frequently thaw and melt, and the waters therefrom drain down and upon the crosswalk; and that during the period of time referred to in the complaint the snow and ice were frequently melted and thawed, and waters therefrom were permitted to run down, and over, and upon, the accumulation of snow and ice upon the crosswalk, and, by subsequently freezing, the danger to pedestrians in crossing and using the crosswalk became great; that it was the duty of the city to remove said condition or prevent the same from continuing to exist; that the defendant and its officers knew, or, in the exercise of reasonable care and diligence, should have had knowledge, of said condition; and that they failed and neglected to remove the same, and, at the time of the happening of the accident to the plaintiff, the crosswalk was in the condition described, and had been in such condition for a period of more than five days immediately prior thereto."

Plaintiff had judgment in the district court. Reversing this judgment, on the point in which we are interested in the case at bar this was said:

"Defendant claims, however, that a municipality is not, and in the nature of things cannot be, held to as

strict an accountability for permitting ice and snow to accumulate on a crosswalk as it may be for a like accumulation upon a sidewalk, and we think this to be the general rule. McQuillin, Mun. Corp. § 2794; Egan v. New York, 175 App. Div. 358, 161 N. Y. Supp. 849. Primarily, of course, it is the duty of every municipality to exercise active vigilance to keep all of its streets in a safe condition suitable for the public use, but it can be held only to a reasonable performance of this duty. It would be a great hardship, and involve ruinous expense, if all of the city's streets subject to being affected by winter storms are to be constantly watched and diligently kept in a thoroughly good condition. No amount of diligence can supply an adequate force or adequate means to prevent the inevitable accumulation of snow during winter storms, or the occurrence of ice during the period when it is alternately thawing and freezing.

"The rule and the reason for it, in not applying such a high degree of duty in regard to snow and ice on crosswalks as on sidewalks, is well stated in Brennan v. New York, 130 App. Div. 267, 114 N. Y. Supp. 578, as follows: 'The claim is that the plaintiff slipped on hard or packed snow or ice on the crosswalk. It is not enough to show snow or ice to show that the city was negligent. In this variable winter climate of ours, falls of snow, followed by rain, or by thawing, and then by freezing, and so alternating from day to day, are common. The city is in no way responsible for such conditions; nor is the impracticable duty put upon it of keeping the streets free of such snow and slush. This general condition all over the city is the work of nature, and cannot be guarded against. But if the city should negligently suffer snow and ice to remain and accumulate in a particular place, until it becomes of a permanent nature, and a dangerous obstruction to pedestrians, then it would be liable, and this is the measure of its liability.'

"In the case of Dupont v. Port Chester, 204 N. Y. 351, 39 L. R. A. (N. S.) 1167, 97 N. E. 735, Ann. Cas. 1913C, 1066, the court said: 'There is a difference in the duty of a municipality regarding the care of side-

walks, used wholly by pedestrians, and crosswalks, or places where people cross over streets, which are used in winter with teams. . . . Even if the entire removal of snow from a crosswalk is desirable for its use by pedestrians, the ordinary travel upon a street necessarily carries more or less snow upon the crosswalk, and when it thaws and freezes with the varying temperature it would be quite impossible, except by continuous effort, to keep crosswalks or crossings wholly free from snow and ice. We repeat that the obligation resting upon a municipality to keep its sidewalks free from snow and ice does not, in the absence of express provision of statute, apply to the same extent to a crosswalk or crossing on a public street.' "

We are obliged to conclude upon the foregoing authorities and many others which we have examined and studied but which either to cite or to review would unwarrantably extend this opinion, that the District Court of Fremont County ruled correctly in entering the judgment it did. That being so, we announce an affirmance.

*Affirmed.*

KIMBALL, J., and BLUME, J., concur.