Beverly J. EISELEIN, Appellant
(Plaintiff),

v.

K–MART, INC., Appellee (Defendant).

No. 92–43.

Supreme Court of Wyoming.

Feb. 8, 1994.

Thomas E. Lubnau II and Daniel B. Bailey of Lubnau & Bailey, Gillette, for appellant.

J. Stan Wolfe and C. John Cotton, Gillette, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN, and TAYLOR, JJ.

GOLDEN, Justice.

In this outdoor slip-and-fall case, appellant Beverly Eiselein appeals the district court's grant of summary judgment to K–Mart on appellant's claims of negligence and premises liability. The district court determined appellant's claims were barred by the obvious danger and natural accumulation rules.

We reverse and remand for a new summary judgment hearing.

### ISSUES

In her initial appeal, appellant raised the following issues for our review:

I. The District Court erred in resolving the following fact questions as a matter of law:

    A. Whether the hazardous condition was open and obvious;

    B. Whether the Plaintiff had actual or constructive knowledge of the unsafe condition;

    C. Whether the hazardous condition was a natural accumulation.

II. The District Court erred in applying the "Known and Obvious Danger" rule, thus negating Defendant's duty, and barring recovery, in contravention of Wyoming's Comparative Negligence Statute Section 1–1–109.

After considering these issues, this court determined that resolution of the case would

be benefitted by additional briefing and argument. Consequently, the parties were ordered to submit additional briefing to address the continued viability of the obvious danger and natural accumulation rules.

In her supplemental brief appellant presented the following issue for our review:

The District Court erred in applying the "Known and Obvious Danger" rule, thus negating Defendant's duty, and barring recovery, in contravention of Wyoming's Comparative Negligence Statute Section 1-1-109.

Appellee K-Mart responded with this statement of the issues:

A. Did the enactment of the comparative negligence statute, W.S. Section 1-1-109, modify the long standing rule of law that there is no duty to remove natural accumulations of ice and snow?

B. Should current law regarding the natural accumulation rule be changed, regardless of the intended effect of the comparative negligence statute?

C. Even if long standing precedent regarding the natural accumulation rule is rejected, and the law argued by Appellant adopted, should the summary judgment granted by the trial court be reversed?

## FACTS

At approximately 8:27 p.m. on December 18, 1987, appellant drove her truck to the K-Mart store in Gillette, Wyoming, to purchase a strand of Christmas lights. She parked her truck in the K-Mart parking lot in a space near the front of the store. As she exited her vehicle, her left foot slipped, she heard a crack like "splitting wood," and she fell to the ground, ending up on her bottom. She severely fractured her left ankle and has required extended medical treatment including surgery.

Appellant never actually saw what she slipped on; however, as she tried to push herself up off the ground, she felt something slippery. When asked in her deposition to describe the substance in more detail, she explained that "[i]t was solid. It was raised. It was cold so I deduced that it was ice." Appellant's husband returned to the K-Mart parking lot the following day and inspected the area surrounding the truck. Near the driver's side door of the truck he discovered a patch of ice which he described as "black ice." In his deposition, he testified the ice appeared to have formed when chunks of snow and ice melted and accumulated in a low spot in the parking lot.

Appellant subsequently filed a complaint and amended complaint against K-Mart to recover for her injuries on the basis of negligence and premises liability. She claimed K-Mart had negligently maintained its parking lot, allowing depressions to form where water could accumulate, freeze and create a safety hazard. She further contended that K-Mart was negligent in its failure to inspect its parking lot, warn its customers of the icy condition, and place salt or sand on the icy spots.

Following discovery K-Mart moved for summary judgment on the ground it owed no duty to appellant. The district court agreed and granted K-Mart's motion for summary judgment, declaring that "the plaintiff must show an unnatural accumulation of ice, snow or water." The district court determined no genuine questions of material fact existed concerning whether the ice appellant slipped on was a natural accumulation, whether the defendant had taken steps to maintain the premises in a reasonably safe condition, and whether K-Mart had actual or constructive knowledge that an unsafe condition existed. This appeal followed.

## STANDARD OF REVIEW

■ Summary judgment is proper when no genuine issues of material fact exist, and the prevailing party is entitled to judgment as a matter of law. *Lynch v. Norton Constr.*, 861 P.2d 1095, 1097 (Wyo.1993); *Brown v. Avery*, 850 P.2d 612, 614–15 (Wyo.1993). "When reviewing the propriety of a grant of summary judgment, we review the record in the light most favorable to the party opposing the motion, giving that party all favorable inferences that can be drawn from the facts." *Lynch*, 861 P.2d at 1097; *Miller v. Campbell County*, 854 P.2d 71, 75 (Wyo.1993). "If no issue of material fact is found to exist, sum-

mary judgment is appropriate, even in a negligence case." *Lynch,* at 1097 (quoting *Brown,* 850 P.2d at 614).

## DISCUSSION

1. *Viability of the Natural Accumulation Rule*

■ As a general rule, a possessor of land owes a duty to his business invitees to maintain his premises in a reasonably safe condition. *Mostert v. CBL & Assoc.,* 741 P.2d 1090, 1098 (Wyo.1987). However, this court has adopted the rule that an owner or occupier of a premises will not be liable for injuries resulting from a slip and fall on a natural accumulation of ice or snow. *Petersen v. Campbell County Memorial Hosp. Dist.,* 760 P.2d 992, 994 (Wyo.1988); *Sherman v. Platte County,* 642 P.2d 787, 789 (Wyo.1982); *Johnson v. Hawkins,* 622 P.2d 941, 943 (Wyo.1981); *Bluejacket v. Carney,* 550 P.2d 494, 497 (Wyo.1976); *Watts v. Holmes,* 386 P.2d 718, 719 (Wyo.1963).

■ This appeal presents us initially with the question whether the legislature's adoption of comparative negligence abrogated the natural-accumulation rule. In *Sherman,* in which the plaintiff slipped on an obvious patch of ice in a sheriff's parking lot, this court specifically rejected such a claim. Writing for the court, Justice Raper succinctly stated:

> Comparative negligence only abrogated absolute defenses involving the plaintiff's own negligence in bringing about his or her injuries. However, it did not impose any new duties of care on prospective defendants. Since the law of this state is to the effect that there is no duty to remove or warn of an obvious danger or one that is known to the plaintiff, no change was accomplished in that law by the adoption of comparative negligence.

*Sherman,* 642 P.2d at 790 (citation omitted).

■ Closely related to the natural-accumulation rule is the open and obvious danger rule which provides that no duty exists which requires either the removal of an obvious danger or a warning of its existence. In *O'Donnell v. City of Casper,* 696 P.2d 1278, 1283 (Wyo.1985), this court held that "[a]n inflexible rule that a known and obvious danger is an absolute bar to recovery is not compatible with the doctrine of comparative negligence." We did not conclude, however, that the comparative negligence statute completely abrogated the rule; rather, we indicated it modified the known and obvious danger rule, restricting its application to known and obvious dangers resulting from natural causes. *O'Donnell,* 696 P.2d at 1282.

We find support for the *Sherman* and *O'Donnell* decisions in the language of Wyoming's comparative negligence statute, WYO. STAT. § 1–1–109 (1988). We construe this statute according to our well established rules of statutory construction, as recently summarized in *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040 (Wyo.1993). "[T]he intent [of the lawgiver] is the vital part, and the essence of the law * * *. Such intent, however, is that which is embodied and expressed in the statute * * * under consideration." *Parker,* 845 P.2d at 1042 (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 128, 50 P. 819, 821 (1897)). "The initial step in arriving at a correct interpretation is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Parker,* 845 P.2d at 1042 (quoting *Rasmussen,* 7 Wyo. at 135, 50 P. at 823). "[I]f the statutory language is unambiguous, the court may not resort to application of rules of construction"; the court must apply the plain meaning of the statute. *Parker,* 845 P.2d at 1043. Finally,

> [t]his court presumes that the legislature enacts statutes with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as part of a general and uniform system of jurisprudence.

*Parker,* 845 P.2d at 1044 (quoting *Civic Ass'n of Wyoming v. Railway Motor Fuels,* 57 Wyo. 213, 238, 116 P.2d 236, 245 (1941)).

The language of WYO.STAT. § 1–1–109 is unambiguous. The relevant portion reads:

> (a) Contributory negligence shall not bar a recovery in an action by any person or his

legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence of the said person is not more than fifty percent (50%) of the total fault. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

The plain language of the statute cannot be read to impose new duties of care on prospective defendants. Since we presume the legislature enacts statutes with full knowledge of existing law and with reference to it, we must assume the legislature understood that there exists no duty to warn of or remove natural accumulations of ice and snow. Therefore, had the legislature intended to impose that duty upon prospective defendants, the legislature would have expressly provided for such a result in the statute. However, by adopting the comparative negligence statute, the Wyoming legislature simply instituted a fair system of apportionment of damages. Before adoption, a plaintiff could not recover in a negligence action if found to be contributorily negligent; after adoption, the defendant, as an affirmative defense, may present evidence of a plaintiff's negligence in order to reduce damages. Although the legislature intended to limit a defendant's defenses, it did not intend to affect the defendant's initial duty.

The purposes of the comparative negligence statute were plainly expressed in the enacting clause when passed by the legislature in 1973. The first purpose expressed in the enacting clause is "abolishing common law defense of contributory negligence," and the second is "establishing a rule of comparative negligence." 1973 Wyo.Sess.Laws, ch. 28. This statute treats and is limited to the extent of liability for damages arising from an occurrence. Its purpose is to distribute liability on the basis of causal fault, and the legislature's only intention in passing the statute was to ameliorate the harshness of the contributory negligence bar. *See Barnette v. Doyle,* 622 P.2d 1349, 1361 (Wyo. 1981) and *Brittain v. Booth,* 601 P.2d 532, 534 (Wyo.1979). It does not concern the nature and extent of the duty owed, but rather concerns itself with the "all or nothing" philosophy which previously attended tort negligence actions when the plaintiff's contributory negligence, however slight, foreclosed all defendant's responsibility for plaintiff's injuries. The enactment of the statute did not affect or change the basic duty *vel non* of any person to the rest of the world; in particular, it did not speak to the duty *vel non* of the owner or occupier of premises to persons entering the premises.

We find additional support for our conclusion, that the natural-accumulation and obvious-danger rules survive adoption of comparative negligence, in the authority of other jurisdictions which have reached the same conclusion that both rules concern a defendant's duty, and comparative negligence imposes no new duties on prospective defendants. *See, e.g., Ward v. K–Mart Corp.,* 136 Ill.2d 132, 143 Ill.Dec. 288, 554 N.E.2d 223 (1990); *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 485 N.W.2d 676 (1992); *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983).

In *Riddle,* the Michigan Supreme Court held:

> The adoption of comparative negligence * * * does not abrogate the necessity of an initial finding that the premises owner owed a duty to invitees. Moreover, we find that the duty element and the comparative negligence standard are fundamentally exclusive—two doctrines to be utilized at different junctures in the determination of liability in a negligence cause of action.

*Riddle,* 485 N.W.2d at 681. The Illinois Supreme Court elaborated on the difference between duty and apportionment of fault, noting that allowing the obvious danger rule to act as a bar to recovery was not tantamount to "a resurrection of contributory negligence." *Ward,* 143 Ill.Dec. at 295, 554 N.E.2d at 230. That court concluded that "the scope of a defendant's duty is not defined by reference to plaintiff's negligence or lack thereof." *Ward,* 143 Ill.Dec. at 295, 554 N.E.2d at 230. In determining the existence of a duty, the focus must be on the defendant and upon public policy considerations such as the likelihood of injury, the possible serious nature of such an injury, the magnitude of

the burden of guarding against the injury, and the consequences of placing that burden upon the defendant. *Ward*, 143 Ill.Dec. at 295, 297, 554 N.E.2d at 230, 232.

We agree with the Illinois Supreme Court's observation that

> the fact a person's injury resulted from his encountering a known or open and obvious condition on a defendant's premises is a proper factor to be considered in assessing the person's comparative negligence. It is unquestionably relevant to whether the injured party was exercising a reasonable degree of care for his own safety. And in this respect a plaintiff's own fault in encountering such a condition will not necessarily bar his recovery. * * * [H]owever, * * * the obviousness of a condition is also relevant to the existence of a duty on the part of defendant.

*Ward*, 143 Ill.Dec. at 293, 554 N.E.2d at 228. The factors relevant to defining a defendant's duty may be the same factors considered in apportioning fault. However, the adoption of comparative negligence does not foreclose consideration of those factors in defining the scope of a defendant's duty.

We conclude, therefore, that absent the legislature's express intention to abrogate the natural-accumulation and obvious-danger rules, the rules survive the adoption of comparative negligence. To hold otherwise would raise the question of what other new legal duties the statute imposes on other classes of potential defendants. For example, would the passerby who discovers another in harm's way due to a dangerous condition not of the passerby's making now owe a duty of care to that person in peril? Would the Wyoming municipality, which heretofore owed no duty to a citizen to remove snow, ice, or slush from streets or crosswalks, *Norman v. City of Gillette*, 658 P.2d 697 (Wyo. 1983) and *Smith v. Town of Lander*, 67 Wyo. 121, 215 P.2d 861 (1950), now owe that duty? Would the tavern owner now owe a duty of care to the patron who takes his fight outside, *White v. HA, Inc.*, 782 P.2d 1125 (Wyo. 1989)? Would the owner of that little log cabin in the mountains now owe a duty of care to a friend who, when the owner is away, drops by for a stay and slips and falls on the naturally growing grass, *Allen v. Slim Pickens Enter.*, 777 P.2d 79 (Wyo.1989)? Would the county that operates the garbage pit now owe a duty to modify the wall along one edge of the pit to prevent a citizen using the pit from losing his or her balance and falling into the pit, *Radosevich v. Bd. of County Comm'rs of Sweetwater*, 776 P.2d 747 (Wyo.1989)? Would the restaurant owner now owe a duty to provide first aid to a patron choking on food, *Drew v. LeJay's Sportmen's Cafe, Inc.*, 806 P.2d 301, 2 A.L.R.4th 1172 (Wyo.1991)?

We hold that in Wyoming, the rule remains that an owner or occupier of premises will not be liable for injuries resulting from a slip and fall on a natural accumulation of ice and snow. Having determined the natural-accumulation rule is the law in Wyoming, we must next determine the scope of that rule.

### 2. Scope of the Natural–Accumulation Rule

We adopted the natural-accumulation rule in *Watts*, 386 P.2d at 719, and more clearly defined it in *Bluejacket*, as follows:

> [A] proprietor is not considered negligent for allowing the natural accumulation of ice due to weather conditions where he has not created the condition. The conditions created by the elements, such as the forming of ice and falling of snow, are universally known and there is no liability where the danger is obvious or is as well known to the plaintiff as the property owner.

*Bluejacket*, 550 P.2d at 497. The rationale underlying this rule is that

> in a climate where there are frequent snowstorms and sudden changes of temperature, these dangerous conditions appear with a frequency and suddenness which defy prevention, and usually, correction; consequently, the danger from ice and snow in such locations is an obvious one, and the occupier of the premises may expect that an invitee on his premises will discover and realize the danger and protect himself against it.

62A AM.JUR.2d *Premises Liability* § 699 (1990).

The justification for the natural-accumulation rule comports with the factors to be

considered in determining the existence of a duty. The magnitude of the burden on defendant to prevent injuries from snow or ice is great. As noted above, natural winter conditions make it impossible to prevent all accidents. The plaintiff is in a much better position to prevent injuries from ice or snow because the plaintiff can take precautions at the very moment the conditions are encountered. Even if the plaintiff is unaware of the ice or snow he happens to slip on, he may be charged with knowledge that ice or snow is a common hazard in the winter, one which he must consistently guard against.

We agree with appellee that no justification exists for imposing on a property owner a duty to protect invitees from hazards which are naturally occurring and identical to those encountered off of the premises. However, the equities shift if the accumulation of ice or snow is not a natural accumulation, but rather an artificial condition created by the defendant. If the defendant creates the hazard, then it is within the defendant's control and he is in a better position to foresee and prevent injuries resulting from the hazard. If the condition occurs naturally, the defendant is in no better position than the plaintiff to prevent the injuries. *See Tyrrell v. Investment Assoc., Inc.,* 16 Ohio App.3d 47, 48, 16 OBR 50, 50, 474 N.E.2d 621, 624 (1984).

Our next step, then, is to determine what constitutes an artificial or unnatural accumulation of ice or snow. We are satisfied with the distinction adopted by Massachusetts:

> The landowner has the right to improve his land by a change of grade or by the construction of buildings even if the natural course of surface water is thereby changed. But he has no right to collect surface water into an artificial channel and discharge it upon the way [or permit it to accumulate] in a greater quantity than would have been discharged if the natural conformation of his land had not been altered.

*Harrison v. Poli–New England Theatres, Inc.,* 304 Mass. 123, 23 N.E.2d 99, 100 (1939) (citations omitted).

We hold, therefore, that an owner or occupier of premises owes a duty to prevent injuries resulting from an unnatural accumu-

lation of ice which will be found if the owner or occupier *creates an accumulation of water* in a manner *substantially different in volume or course* than would naturally have occurred. Other jurisdictions have adopted similar tests. *See, e.g., Lash v. J.J. Newberry Co.,* 510 F.2d 429 (2d Cir.1975) (Vermont); *Key v. Lerner Shops of Colorado, Inc.,* 472 P.2d 752 (Colo.App.1970); *Young v. Talcott,* 114 Conn. 675, 159 A. 881 (1932); *Wells v. Great Atlantic & Pacific Tea,* 171 Ill.App.3d 1012, 121 Ill.Dec. 820, 525 N.E.2d 1127 (1 Dist.1988).

We wish to emphasize that the accumulation created by the owner or occupier must be *substantially* different in volume or course. Even the most ably constructed and carefully maintained parking lot will probably contain minor indentations in which naturally occurring water can accumulate and freeze. Naturally occurring water which naturally concentrates in such a lot is still considered a natural accumulation.

### 3. *Remand*

We are remanding for a new summary judgment hearing. This will provide both parties the opportunity to frame their issues in light of our definition of unnatural accumulation. The district court may then determine anew whether a genuine question of material fact exists.

As a final matter, we respond to K–Mart's contention that appellant failed to establish a *prima facie* case of negligence because she did not demonstrate what caused her fall. Although appellant could not conclude with certainty what she slipped on, she did testify the substance was cold and hard, and we find this sufficient to raise a question of fact as to whether it was ice. Of course, before this question becomes relevant the district court must determine that a question of fact exists concerning whether the accumulation was natural or unnatural.

### CONCLUSION

The natural-accumulation rule survived adoption of comparative negligence and applies in this instance. We remand for a new

summary judgment hearing for proceedings consistent with this opinion.

MACY, C.J., and CARDINE, J., each filed a specially concurring opinion.

THOMAS, J., filed an opinion, concurring specially and dissenting.

MACY, Chief Justice, specially concurring.

I agree that the summary judgment should be reversed and that the case should be remanded for a trial. However, the opinion of the majority that a landowner owes no duty to his invitees to warn of or remove natural accumulations of snow and ice is incompatible with the plain, unambiguous language contained in Wyoming's comparative-negligence statute.

The majority applies an extensive statutory analysis to interpret the comparative-negligence statute. Wyo.Stat. § 1-1-109(a) (1988). It concludes that the rule that landowners do not have a duty to warn of or remove natural accumulations of ice and snow survived the adoption of the comparative-negligence doctrine in Wyoming. In light of this Court's decision in *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985), such statutory-construction analysis is not necessary or proper in this case.

In *O'Donnell,* the Court considered the impact of the comparative-negligence statute on the open-and-obvious-danger rule as it applied to nonnatural conditions. The Court in that case did not go through the elaborate interpretation procedure employed by the majority in this case in construing the comparative-negligence statute. Instead, it appears that the Court found that the plain, unambiguous language of the statute warranted the conclusion that the open-and-obvious-danger rule was not compatible with the comparative-negligence statute, at least with respect to nonnatural dangers. Since the extensive statutory-construction analysis was not necessary in *O'Donnell,* it is not necessary in this case.

The majority's analysis of the comparative-negligence statute is not consistent with the established rules of statutory construction. Section 1-1-109(a) provides:

(a) Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if the contributory negligence of the said person is not more than fifty percent (50%) of the total fault. Any damages allowed shall be diminished in proportion to the amount of negligence attributed to the person recovering.

The proper method of interpreting statutes is explained in *Parker Land and Cattle Company v. Wyoming Game and Fish Commission,* 845 P.2d 1040, 1042–43 (Wyo.1993) (some citations omitted):

"[T]he intent [of the lawgiver] is the vital part, and the essence of the law.... Such intent, however, is that which is embodied and expressed in the statute ... under consideration."

*Rasmussen v. Baker,* 7 Wyo. 117, 128, 50 P. 819, 821 (1897). "[T]he initial step in arriving at a correct interpretation ... is an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." *Rasmussen,* 7 Wyo. at 133, 50 P. at 823....

....

On numerous occasions the court has, over its long history, consistently followed a general rule that if the statutory language is unambiguous, the court may not resort to application of rules of construction.

The majority opinion recognizes that Wyoming's comparative-negligence statute is unambiguous. However, it incorrectly interprets the statute by going beyond the plain and unambiguous language.

Under the plain language of the statute: "Contributory negligence shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence." Section 1-1-109(a). The language of the statute clearly indicates that comparative negligence applies to all actions in negligence. The Legislature did not include an exception in the statute for landowners with regard to natural accumulations of snow and ice. The majority's interpretation effectively

reads such an exception into the statute. This interpretation violates a basic tenet of statutory construction—that omission of words from a statute is considered to be an intentional act by the Legislature. This Court should not read words into a statute when the Legislature has chosen not to include them. *Carroll by and through Miller v. Wyoming Production Credit Association,* 755 P.2d 869, 872–73 (Wyo.1988).

It makes no sense for this Court to retain the no-duty rule for natural accumulations of snow and ice when we ruled in *O'Donnell* that the no-duty rule did not apply to nonnatural dangers under the comparative-negligence statute. *See also Stephenson v. Pacific Power & Light Company,* 779 P.2d 1169 (Wyo.1989). In dicta in *O'Donnell,* we stated that the no-duty view of the open-and-obvious-danger rule should be retained when the danger stems from natural causes. Our reasoning for making nonnatural obvious dangers a factor to be weighed in determining the parties' respective negligence was that it would be irrational to "provide[ ] that one who creates a known and obvious danger has no duty to correct it because it is known and obvious." *O'Donnell,* 696 P.2d at 1283. We did not really explain why the rule should be retained in conjunction with natural dangers except to say that the dangers were natural. *Id.*

The Idaho Supreme Court considered the relationship between Idaho's comparative-negligence statute and the open-and-obvious-danger rule in *Harrison v. Taylor,* 115 Idaho 588, 768 P.2d 1321 (1989). That court held that the open-and-obvious-danger rule inappropriately barred recovery under Idaho's comparative-negligence statute in cases dealing with nonnatural dangers. In all relevant aspects, Idaho's comparative-negligence statute[1] is identical to Wyoming's comparative-negligence statute. The Idaho Supreme Court quoted an Idaho Court of Appeals case in its decision:

"There is also a statutory reason in Idaho to treat an invitee's knowledge or the obviousness of a danger as a limitation of liability rather than as an excuse of duty. Since 1971, Idaho has been a comparative negligence state. I.C. § 6–801 provides that the plaintiff's contributory negligence does not bar recovery in a negligence action, so long as his negligence is not as great as the negligence of the person against whom recovery is sought. Rather, any damages awarded to the plaintiff are reduced in proportion to the amount of causal negligence attributable to him.

"Prior to the advent of comparative negligence, contributory negligence was an absolute bar to recovery. Thus, it made little difference whether a known or obvious condition excused a land possessor's duty to an invitee, or simply insulated the possessor from liability for any breach of such duty. In either event, the injured invitee could not recover. But under the comparative negligence system, the difference is profound. If duty is not excused by a known or obvious danger, the injured invitee might recover, albeit in a diminished amount, if his negligence in encountering the risk is found to be less than the land possessor's negligence in allowing the dangerous condition or activity on his property. In contrast, if the invitee's voluntary encounter with a known or obvious danger were deemed to excuse the land owner's duty, then there would be no negligence to compare—and, therefore, no recovery. The effect would be to resurrect contributory negligence as an absolute bar to recovery in cases involving a land possessor's liability to invitees."

*Harrison,* 768 P.2d at 1325 (quoting *Keller v. Holiday Inns, Inc.,* 105 Idaho 649, 671 P.2d 1112, 1118–19 (1983)). *See also Koutoufaris*

---

1. Idaho Code I.C. § 6–801 provides:
   "**Comparative Negligence—Effect of contributory negligence.**—Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence or gross negligence resulting in death or in injury to person or property, if such negligence was not as great

as the negligence or gross negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."
   *Harrison,* 768 P.2d at 1324 n. 1 (emphasis omitted).

v. Dick, 604 A.2d 390 (Del.Super.Ct.1992); Donahue v. Durfee, 780 P.2d 1275 (Utah Ct.App.1989), cert. denied, 789 P.2d 33 (1990); Cox v. J.C. Penney Company, Inc., 741 S.W.2d 28 (Mo.1987) (en banc), accord, Hefele v. National Super Markets, Inc., 748 S.W.2d 800 (Mo.Ct.App.1988); Woolston v. Wells, 297 Or. 548, 687 P.2d 144 (1984) (en banc); and Parker v. Highland Park, Inc., 565 S.W.2d 512 (Tex.1978).

The Idaho Supreme Court extended the Harrison ruling to natural accumulations of snow and ice in Robertson v. Magic Valley Regional Medical Center, 793 P.2d 211, 213 (Idaho 1990):

> [W]e are not able to discern how we could construe the statute to allow an exemption for negligence as to natural accumulations. To do so would require us to construe the statute as allowing us to apply comparative negligence in some cases but not in others. As we read the statute, it does not allow us to do that. The statute speaks categorically about actions for negligence.

I agree with the analysis presented by the Idaho Supreme Court. Wyoming's comparative-negligence statute forecloses the use of the open-and-obvious-danger rule to discharge a landowner from his obligation to exercise due care with respect to natural accumulations of snow and ice.

The majority's decision is not based in sound statutory interpretation. Instead, it represents a policy choice by this Court to insulate landowners from responsibility for their own negligence. This policy decision is improper in light of the Legislature's express direction that contributory negligence "shall not bar a recovery in an action by any person or his legal representative to recover damages for negligence." Section 1–1–109(a).

In my opinion, we should abolish the distinction between nonnatural and natural dangers and treat the accumulation of snow and ice and the obviousness of the danger as being factors to be considered in determining the percentage of fault attributable to each party under the comparative-negligence statute. I would reverse and remand for a trial to determine the parties' relative percentages of fault.

The majority's decision places the state of the law in Wyoming in question with regard to nonnatural dangers. Does the majority decision effectively overrule O'Donnell? If the majority's rationale in this case is sound, should it now apply to nonnatural dangers as well? Until additional cases have been decided by this Court, the state of the law in Wyoming will, unfortunately, be in a state of flux.

CARDINE, Justice, specially concurring.

I concur in the court's opinion insofar as it determines the issues presented by the facts in this case. To the extent that the opinion may go beyond this case in discussing the effect of the volume and course of water flowing to adjoining land, I take no position but prefer awaiting a factual presentation that requires our discussion of these questions.

The case we consider here requires resolution of the following:

1. Are there facts from which it could be found that this was an unnatural accumulation of ice or moisture?

2. Is so, was K–Mart negligent in construction or maintenance of the parking lot which permitted the accumulation?

3. Or, was K–Mart negligent in failing to warn of or remove the dangerous condition?

I would confine the discussion in our opinion to the above.

THOMAS, Justice, concurring specially and dissenting.

I agree the summary judgment in this case must be reversed, and the case remanded for further proceedings. I cannot, however, subscribe to the rationale of the opinion of the Court.

We have chosen to use this case as a vehicle to debate the continuing viability of the no duty rule with respect to natural accumulation of moisture when we really are setting aside a summary judgment because of a genuine issue of material fact as to whether the condition of which the injured party complains was the product of a natural accumulation. In the process we have im-

ported some muddy water from Massachusetts to adopt a definition of an unnatural accumulation of water from a case that does not appear to have been resolved in the context of a rule of no duty relating to natural accumulations.

The Massachusetts court also said:

It was a question of fact whether the defendant was negligent in maintaining an improper or defective marquee from which water escaped upon the way and froze and in suffering the ice to remain upon the sidewalk up to the time the plaintiff was injured.

*Harrison v. Poli–New England Theatres, Inc.,* 304 Mass. 123, 23 N.E.2d 99, 100 (1939).

To paraphrase that concept for this case:

It was a question of fact whether K–Mart was negligent in maintaining an improper or defective parking lot on which water melted and froze and in suffering the ice to remain upon the parking lot up to the time the plaintiff was injured.

It would be far more helpful to the parties in this case, since we are opting to maintain the rule that an entrepreneur has no duty to protect customers from hazardous conditions attributable to the natural accumulation of ice and snow, to offer guidance as to the resolution of the case if the finder of fact should conclude the condition in this instance was not caused by a natural accumulation of ice and snow. If a duty exists on the part of the business proprietor to attend to the condition of the parking lot at some time subsequent to the natural accumulation (and I submit that such a duty does exist), then what are the rules that apply in identifying a breach of such a duty that may lead to liability?

It appears we all might agree a finder of fact could conclude the conditions in the parking lot were not the result of a natural accumulation of moisture (unless we also adopt a rule that all moisture comes from the sky and therefore moisture is always a natural accumulation). The résumé of Wyoming cases found in *O'Donnell v. City of Casper,* 696 P.2d 1278 (Wyo.1985), then becomes useful in addressing this case. A fair summary of *O'Donnell* is that, if the applicable rule is the clear and obvious danger rule, the negligence of the plaintiff and the defendant must be compared in resolving the issue of liability. There is also to be gleaned from *O'Donnell* the proposition that an actor may have a duty to correct a known and obvious danger if the actor created it. It does not seem that it should be necessary to find a distinction between those situations in which the dangerous condition was created generally by, for example, the construction of a parking lot or specifically by, for example, spreading gravel on a street.

At this juncture, the known and obvious danger rule really comes down to a comparison between the actors as to which had the best opportunity to be aware of, and avoid, the injury. That comparison assumes each knew of the hazardous condition and, in this instance, I would extend the rule of *Buttrey Food Stores Division v. Coulson,* 620 P.2d 549, 20 A.L.R.4th 419 (Wyo.1980), to satisfy the requirement for proving the knowledge of K–Mart. In light of the record information of the attention K–Mart paid to the parking lot, the application of the *Buttrey* rule must have been anticipated by K–Mart. Conceding that, in an imperfect world, it may not be possible to construct a perfect parking lot, a warning of a known hazardous condition is well within the realm of possibility.

In summary, I agree the summary judgment should be reversed and the case remanded because there is a genuine issue of a material fact, *i.e.,* was the accumulation natural or unnatural. I would not, however, adopt the definition of an unnatural accumulation offered in the majority opinion, but might well leave that to the common sense judgment of the trier of fact. I would impose a duty upon an owner of land, particularly a business proprietor, to address the hazardous condition at some point in time after the moisture was deposited as a natural phenomenon. In so doing, I would apply the rule of *Buttrey* in determining whether the owner was chargeable with knowledge of the hazardous condition. The relative responsibility of the actors then should be weighed

under the rule relating to comparative negligence.

I would reverse and remand because there is a genuine issue of material fact. I accept the natural accumulation rule of no duty, but I would attempt to afford guidance for the application of the clear and obvious danger rule in this instance.